## MURPHY v. LINDELL RAILWAY COMPANY, Appellant.

Division One, December 22, 1899.

**Negligence:** CIVIL LIABILITY CREATED BY ORDINANCE: INSTRUCTION. A city can not by ordinance create a civil liability, from one citizen to another, for damages which may result to one citizen by the neglect of the other to obey such ordinance. And hence an instruction authorizing a recovery for personal injuries upon proof of a breach of a municipal ordinance by a street railway company, without any proof of the acceptance of the provisions of that ordinance by the company, and in total disregard of the concurrent negligence of the defendant, is error.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann* and *Lon O. Hocker* for appellant.

Plaintiff's instruction 1 is erroneous in that it required defendant's servants in charge of its car, after seeing plaintiff on or near the track, to stop the same in the shortest time and space possible. The requirement to stop in the shortest time and space possible is made by a general ordinance intro-

duced in evidence by plaintiff. This ordinance, being an enlargement of defendant's legal obligation, must have been accepted by it in order to be binding upon it. Sanders v. Street R'y, 147 Mo. 411; Moran v. Car Co., 134 Mo. 641; Fath v. Street R'y, 105 Mo. 537. No acceptance of the general ordinances of the city of St. Louis by the Lindell Railway Company was shown. Indeed, no acceptance of the general ordinances by the Taylor Avenue Railway Company, defendant's lessor, was shown. It was admitted at the trial that the latter company had accepted the provisions of the ordinance which granted it rights in the streets, as that ordinance required it to do, and which alone it required it to accept. The ordinance did not require the Taylor Avenue Railway Company to accept the terms of the general ordinances.

*John T. Murphy* and *A. R. Taylor* for respondent.

(1) In view of the admission by the counsel at the trial, that the Taylor Avenue Railroad Company did accept the provisions of the ordinance, which required it not only to obey "all general ordinances now in force, or that may hereafter be passed in reference to street railways," but to give a bond to do so, we submit that the contention of appellant, that the ordinance does not bind the defendant lessee, is futile. Before the franchise could become operative the grantee was bound to agree to obey the very ordinance read in evidence, and give bond to the city to so obey. This, it is admitted, the grantee did. (2) The first case in this State to hold that an ordinance of a city and its violation could not be introduced in evidence to support an action grounded upon the negligence of the defendant was the case of Fath v. Tower Grove & Lafayette R'y Co., 105 Mo. 543. In that case it was held for the first time that it was necessary to show that the grantee of a franchise from a city to lay its tracks and operate its cars as a street railway upon the streets of a city had agreed either expressly or by implication to obey an ordinance regulating

the operation of street cars upon the streets of the city before
a violation of said ordinance could be introduced as evidence·
of negligence in support of an action grounded upon the neg-
ligence of the defendant.     This case, though not referring to
the cases decided by the Supreme Court, at once overthrew
all the decisions of the Supreme Court of Missouri.     Begin-
ning with Liddy v. Railroad, 40 Mo. 516, where the section
of the ordinance requiring the driver and conductor of street
cars to keep a vigilant watch and to stop car upon first ap-
pearance of danger within the shortest time and space possible,
was upheld.     This ordinance has been a part of the Revised
Ordinances for thirty years.     In the case of Karle v. Railroad,
55 Mo. 483, an ordinance of the city of St. Joseph, regulating
the speed of trains, keeping of head-lights and the ringing of
the bell, was upheld without any acceptance by the railroad.
The court, by NAPTON, Judge, saying:     "These were viola-
tions of the express law and, of course, amounted to negligence.
Negligence may be asserted as a matter of law, where there
has been a breach of law or a city ordinance, as in the Karle
case."     Norton v. Illner, 56 Mo. 352; Bowman v. Railroad,
85 Mo. 538.     In the case of Keim v. Union Railway Co., 90
Mo. 314, this court held that running a train at a speed in
excess of that allowed by ordinance was negligence *per se* and
cited Karle v. Railroad, 55 Mo. 476; Maher v. Railroad,
64 Mo. 267; Bergman v. Railroad, 88 Mo. 678; Johnson v.
Railroad, 20 N. Y. 65; Railroad v. Dunn, 78 Ill. 197.     In
the cases of Merz v. Railroad, 88 Mo. 676, where the power
of the city of St. Louis to pass an ordinance regulating the
movement of trains in the city on the private way of the
railroad was sharply challenged; and this court held, citing 2
Redfield on Railways, pp. 577, 578, that the city of St. Louis
had such power, even without legislative grant.     The same
proposition is held in Bunkman v. Railroad, 95 Mo. 241;
Grube v. Railroad, 98 Mo. 336; Rafferty v. Railroad, 91 Mo.
37.     We submit that the doctrine of the Fath and Sanders'
cases absolves railroads from liability for injuries caused by

their failure to obey ordinances of city regulating their opera-
tion, and that said cases can not be upheld upon reason or
authority.    Again, the doctrine of the text-books is clearly to
the effect that cities have the inherent police power to pass
ordinances prescribing such regulations.    2 Redfield on Rail-
ways, p. 613; 2 Dillon on Mun. Corp. (4 Ed.), sec. 713;
Crowley v. Railroad, 65 Ia. 663; Correll v. Railroad, 38 Ia.
123.    In this last case it is expressly held that the violation
of an ordinance is negligence, and that a person injured by
such violation may recover for the injury caused by such
violation of the ordinance.    The case announces the very
reasonable doctrine that all persons, in regulating their own
conduct, have a right to expect, until the contrary appears,
that others will perform their legal duty.    This case is directly
in point, for it holds that the imposition by the ordinance
of a fine for its violation in no way prevents the innocent
injured person from his redress for such violation of the ordi-
nance.    Bergman v. Railroad, 88 Mo. 678; Merz v. Railroad,
88 Mo. 672; Mahan v. Depot Co., 34 Minn. 29; Faber v.
Railroad, 29 Minn. 465.

BRACE, P. J.—This is an action for damages for
personal injuries alleged to have been sustained by the plain-
tiff by being struck by one defendant's cars on the fifth day of
July, 1895, while walking on defendant's track on Cottage
avenue in the city of St. Louis, in which the plaintiff obtained
a verdict and judgment, in the court below, for $3,800, and
the defendant appeals.

The specific act of negligence upon which the plaintiff
submitted his case to the jury is thus charged in the petition:
"That at the time of said injury, there was in force within
the city of St. Louis, an ordinance in revision of the ordinances
of the city of St. Louis, and for the government of said city,
whereby it was at said time provided that motormen and
conductors in charge of defendant's cars, should keep a vigilant

watch for all persons on foot either on the defendant's tracks or moving toward it, and upon the first appearance of danger to stop the car within the shortest time and space possible. And the plaintiff avers that the defendant, in consideration of the grant by the city of St. Louis of a franchise to operate its said railway and electric street cars upon said street, undertook and agreed with said city of St. Louis to observe said provisions of said ordinance. And the plaintiff further states that the defendant's servants, its motormen and conductors in charge of its said car, at the time of said injury to the plaintiff, negligently failed to keep such vigilant watch, and negligently failed to stop said car within the shortest time and space possible upon the first appearance of danger to the plaintiff while walking toward and upon defendant's railway track, which said violation of said ordinance directly contributed to his injuries as aforesaid." The answer was a general denial and a plea of contributory negligence upon which issue was joined by reply.

The general ordinance counted upon in the petition is as follows:

"The conductor, motorman, gripman, driver or any other person in charge of each car shall keep a vigilant watch for all vehicles and persons in front, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible."

The special ordinance by which it was sought to prove that the defendant had accepted the provisions of this general ordinance, is as follows:

"Sec. 7. Before availing itself of the rights and privileges granted by this ordinance said Taylor Avenue Railway Co., its successors and assigns shall file with the city register its written acceptance of all the conditions of this ordinance and shall accompany the same with its bond in the sum of $20,000, with two or more sureties, conditioned to hold the city of St.

Louis harmless from all damages that may occur to the city by reason of the failure to comply with all the terms and conditions of this ordinance, and all general ordinances now in force, or that may hereafter be passed in reference to street railways."

It was admitted on the trial that "the Taylor Avenue Company accepted the provisions of this (special) ordinance as required by ordinance, and that the Lindell Railway Company has operated the line of railway authorized to be constructed, under lease from the Taylor Avenue Company."

The instructions asked and given for the plaintiff, except one on the measure of damages, are as follows:

"1.   If the jury find from the evidence that Cottage avenue, at the places mentioned in the evidence was on the 5th day of July, 1895, an open public street, within the city of St. Louis; and if the jury further find from the evidence that on said day the defendant was operating the railway and car mentioned in the evidence for the purpose of transporting persons for hire from one point to another within the city of St. Louis as a street railway; and if the jury find from the evidence that on said day the plaintiff was passing west on Cottage avenue, west of Taylor avenue, in the city of St. Louis, and that whilst so passing west he was on the defendant's track on said street; and if the jury further find from the evidence that whilst the plaintiff was so walking west on defendant's track in said street, defendant's motorman and conductor in charge of its car caused or suffered said car to run against and upon the plaintiff whereby he was injured; and if the jury further find that defendant's motorman and conductor did not keep a vigilant watch for persons on foot either upon defendant's track or moving towards it, and if they had kept such vigilant watch, they would have seen the plaintiff on or near defendant's track and in danger of being struck and injured by said car, and by stopping said car within the shortest time and space possible have averted injury to the plaintiff, and

Vol. 153 mo—17

neglected to do so; then, plaintiff is entitled to recover though he may not have looked or listened for the approach of the car on said track, and was thereby negligent."

"3. The court instructs the jury that if they find from the evidence that the defendant on the 5th day of July, 1895, was operating the car mentioned in the evidence for the purpose of carrying passengers for hire from one point to another within the city of St. Louis as a street railway; and if the jury find from the evidence in this case that Cottage avenue, at the places mentioned in the evidence, was on said day an open, public street within the city of St. Louis; and if the jury find from the evidence that the plaintiff was on Cottage avenue on said day and on or near defendant's track and in danger of being struck and injured by the defendant's westbound car; and if the jury find from the evidence that the defendant's motorman and conductor in charge of the said car either saw or by keeping a vigilant watch for persons on foot either on the track or moving toward it and in danger of being injured by said car would have seen plaintiff on defendant's track or near it, and in danger from said car, and thereafter could have averted injury to the plaintiff by using every effort to stop said car consistent with the safety of said car and its passengers, and failed to do so and thereby plaintiff was struck by said car and injured, then plaintiff is entitled to recover, although he failed to look or listen for an approaching car upon said track."

The oral evidence for the plaintiff tended to prove the facts hypothetically stated in these instructions, and to the giving of them, and to the admission of the ordinances in evidence, the defendant duly excepted, and thus the crucial questions in the case are presented.

(1) While the admission that the defendant was operating the cars upon the railroad in question, was not of itself proof that the defendant agreed with the city to observe the provisions of the general ordinance aforesaid (Sanders v.

Southern Electric R'y, 147 Mo. 411); yet the admission that it was so operating the railway under a lease from the Taylor Avenue Railway Company, put the defendant in the shoes of that company, and it would be bound by such an agreement with that company if proven. That an agreement to observe an ordinance of the city may be inferred from a covenant in a bond to indemnify the city against any damages that may occur to the city by reason of the failure of the obligor to comply with the terms and conditions of that ordinance, is we think quite reasonable. And the Taylor Avenue Railway Company having by its bond agreed to hold the city harmless from all damages that might occur to the city by reason of its failure to comply with the terms and conditions of all general ordinances; it may well be held to have agreed to comply with the terms and conditions of all general ordinance from a failure to obey which damages would occur to the city and that the defendant would be bound by that agreement, and if the city could be held liable in damages to any person for a breach of the provisions of the general ordinance in question, then it might well be held that the defendant had agreed to obeserve the provisions of that ordinance. But right here, is where the plaintiff's case, as made by the petition, breaks down. For it was not shown, nor is it pretended, that the city could be held in damages for any failure of the defendant or of any one else to obey the provisions of that ordinance, and we have twice and quite recently held, before this, in regard to this identical ordinance, that as it creates a new and different standard for measuring the liability of citizens of this State, in the city of St. Louis from that prescribed by "the law of the land" it could be enforced only against those who accepted its provisions for a consideration. [Fath v. Tower Grove & Lafayette R'y, 105 Mo. 537; Sanders v. Southern Electric R'y, 147 Mo. 411.] Speaking with direct reference to this ordinance, it was said in the latter case that, "though the ordinance was allowed to go in evidence without objection,

that alone would not make out a case of legal liability; it required proof of the allegation that the defendant agreed to be bound by it. . . . . A city to which a portion of the police powers of the State have been delegated, has a right to enact police regulations and to punish their violation by fine and imprisonment, but it can not under the guise of the exercise of its police powers create a liability from one citizen to another, or create 'a civil duty, enforcible at common law,' for this is 'the exercise of the power of sovereignty belonging alone to the State.' . . . . The police regulations control the citizen in respect to his relations to the city, representing the public at large, and for this reason are enforcible by fine and imprisonment, but laws controlling the liability of citizens *inter sese*, must emanate from the legislature, in which alone such power is vested by the Constitution." In the former case it was admitted in the opinion, "that it is beyond the power of a municipal corporation by its legislative action directly to create 'a civil duty enforcible at common law;' for this is an exercise of power of sovereignty belonging alone to the State," but it was held that such a liability might be created by a contract between the defendant and the city, by which the former in consideration of the franchise granted by the city, of laying its tracks in the street, agreed to yield obedience to the ordinance.

These cases are decisive of the one in hand. As the instructions given for the plaintiff authorized a recovery upon proof of a breach of the ordinance, without any proof of an acceptance of its provisions by the defendant, there was fatal error in giving them. Although the plaintiff doubtless upon the faith of one of those cases framed the issue which he tendered, alleging such acceptance, yet having failed to prove it, he now asks that those cases be overruled and the doctrine of these instructions be established as the law of this court. This demand could not be granted upon the ground of any different ruling upon this ordinance in other cases, for as was

said in the Fath case although this ordinance has been in existence for over thirty years   its legal validity has never been adjudicated by this court, though incidentally touched upon in several instances.   [Liddy v. Railroad, 40 Mo. 506; McCarthy v. Railroad, 92 Mo. 536; Dunn v. Railroad, 98 Mo. 652.]   In Liddy's case the validity of the ordinance was not raised in any manner in the trial court, and, of course, any utterances in this court on the subject are not possessed of authoritative value.   The same may be said of the other cases cited which went off principally on the insufficiency of the testimony on which to base verdicts for the plaintiffs.   The point in hand, the legal validity of the ordinance, is therefore *res integra* so far as adjudications of this court are concerned."
And in the only case before this court on this ordinance since the Fath case, and before the Sanders case (Senn v. Southern R'y, 108 Mo. 142), the doctrine of the Fath case was recognized, *if not expressly approved*.   Nor could it be granted on the ground, that in many cases cited by counsel for plaintiff, upon analogous ordinances, we have held that the city under its charter had power to pass such an ordinance.   It was so expressly held in the Fath case, for in that case the ordinance was held to be valid and admissible in evidence, and there is nothing in the Sanders case to impugn that holding. But that is not the point in question here, which is not the validity of the ordinance, but its effect upon the rights of the defendant in a civil action.   Nor upon the ground that we have also in many cases, upon other ordinances, held that proof of a violation of those ordinances was proof of negligence, since in none of these cases do we find that a recovery was allowed upon proof merely of a breach of the ordinance.   In every case the plaintiff was required to go farther and prove that the negligence was the proximate cause of the injury. The violation of an ordinance by the defendant could not be the proximate cause of an injury which was the product of such negligence and the concurrent negligence of the plaintiff.

The concurrent negligence of both in such a case is the proximate cause of the injury and the plaintiff can not recover. This is the law universally prevalent in this country and to it there is but one exception in this State made on the score of humanity, and that is if sufficient time and opportunity intervene between the concurrent acts of negligence which produced the dangerous situation, and the injury, to have enabled the defendant by the exercise of ordinary care to have prevented the injury and he fails to exercise such care, then he will not be protected by this rule, but to the failure to exercise such care will the injury be attributed as the proximate cause thereof, and for such failure the plaintiff may recover. And it was upon this ground the plaintiffs were permitted to recover in those cases, but never for a mere breach of the ordinance. No such possible ground of recovery is predicated in these instructions. In fact the jury are told in express terms in each instruction that the plaintiff may recover even though he was guilty of negligence, which together with the failure of defendant's servants to obey the ordinance, contributed to and caused the injury. This can not be the law and we do not think the cases cited by counsel support such a doctrine. But as the decision of this case may safely rest upon the cases already cited directly in point upon the same ordinance, we deem it unnecessary to review and distinguish the other cases. And as the case, by these instructions, was placed before the jury upon an entirely untenable theory, which will have to be abandoned at the next trial, we deem it unnecessary to notice objections urged to the action of the court on the defendant's instructions. We find no reversible error in the action of the court excluding evidence for the defendant.

But for the error in giving the two instructions aforesaid, for the plaintiff, the judgment will be reversed and the cause remanded for new trial.

All concur; *Valliant, J.*, in the result.