SCHMIDT et al., Appellants, v. ST. LOUIS RAILROAD COMPANY.

Division One, June 12, 1901.

1. **Objection:** GENERAL: ORDINANCE. *An objection to the introduction of an ordinance in evidence should be specific enough to inform the court and opposing counsel of the real ground on which it is based. An objection that the defendant was not amenable to it and that it did not apply to it, is too indefinite and vague.*

2. **Street Cars:** REGULATING RUNNING OF CARS AND SPEED: ACCEPTANCE. Where a city by ordinance, granting a railroad company the right to change from horse power to cable or electricity, reserves the right "to regulate the running of cars and speed of trains," it reserved something more than the right to regulate the speed of trains. It also reserves the power to prescribe the care that is to be exercised in running them, etc., and the company, by accepting the ordinance with this clause, accepts it with whatever duty or burden it reasonably imposes.

3. ———: ———: GRIPMAN'S NEGLIGENCE. Where the gripman saw a flock of children just dismissed from school, some on the sidewalk and some chasing across the street in front of his car, and testified that there were two wagons on the track in front and a buggy to one side, which shut off his view of the sidewalk, the court was justified in instructing the jury that the law imposed on him the duty of keeping a vigilant watch, and holding the car under such control as to stop it in the shortest time and space possible, after he discovered the perilous situation, even though there was no ordinance imposing such duty upon him.

Schmidt v. St. Louis Ry. Co.

4. ———: ———: WITHDRAWAL. Error in admitting an ordinance or any other matter in evidence, may be cured by an open statement of counsel, after both sides have rested, and by an instruction, withdrawing it from the consideration of the jury.

5. ———: AGE OF CHILD KILLED: ASSUMPTION. In a suit by a father against a street railway for running over and killing his child, he testified that she was nine years old, and his testimony was not questioned or contradicted. She was spoken of by all the witnesses as "a young child" and "the little girl," and defendant so referred to her in instructions asked. *Held*, that, the point being a minor one, in the connection in which used, the assumption by an instruction that she was "nine years old" was not error.

6. ———: ———: CONTRIBUTORY NEGLIGENCE. An instruction, concerning a child's contributory negligence, to the effect that "if she was old enough to know that if she got in front of an approaching car she was liable to get hurt, and her negligence would defeat her recovery," requires a degree of care and caution not justified by the law.

7. ———: RINGING BELL OR GONG: ASSUMED NEGLIGENCE: JURY. Where the facts are undisputed and are admitted by both sides and are that a street car was running at the rate of twelve miles an hour, down grade, and approaching a cross-street in which there was a flock of children just let out of school, some of whom the brakeman saw on the sidewalk and others chasing across the street in front of his car, and there were wagons on the track in front of his car, and a buggy on one side which shut off his view of the sidewalk, an instruction to the jury that the defendant was negligent if the gripman did not ring the bell or gong, is proper. In such case, although there is no statute or ordinance requiring a street car on approaching a crossing to ring the bell, it is not error to assume in the instruction the admitted facts.

8. ———: ———: ANTICIPATING DANGER. Under these circumstances it becomes the duty of the gripman to be on the lookout for children on the track at the point where the child was injured; and if he stopped the car in the shortest space possible after he saw her perilous condition, yet if he failed to have his car in control, or if, as there was evidence to show, he saw these children crossing the track, and was approaching their crossing on a down grade, with brakes off and gong silent, he was guilty of negligence and the company was liable for the consequent injury.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

REVERSED AND REMANDED *(with directions).*

*Sale & Sale* for appellants.

(1) Section 1275 of the revised ordinances of the city of St. Louis was properly admitted in evidence. (a) Because the defendant agreed that the city might regulate the manner of running defendant's cars, and section 1275 is made by section 1274 binding upon all street railway corporations doing business in the city. Schmidt v. Railroad, 149 Mo. 269. (b) Because section 1275, as a valid police regulation, was binding upon the defendant company, even in the absence of defendant's consent to be bound thereby. Jackson v. Railroad, 58 S. W. Rep. 32. (c) Because the court, by its instruction having withdrawn from the jury all that portion of the ordinance which required the defendant to stop its car in the shortest time and space possible on the first appearance of danger, thereby cured the error, if any, in admitting that portion of the ordinance. 2 Foster's Fed. Prac., p. 769, sec. 372; Pennsylvania Co. v. Roy, 102 U. S. 451. (d) The remaining portion of said ordinance, providing only, as it does, for the keeping of a vigilant watch, imposed no higher obligation upon the defendant than is imposed upon it by the common law, and therefore could not have been prejudicial to the defendant. Hanlon v. Railroad, 104 Mo. 381; Bunyan v. Railroad, 127 Mo. 12; Cook v. Baltimore Traction Co., 80 Md. 551; Schnur v. Traction Co., 153 Pa. St. 29; Winters v. Railroad, 99 Mo. 509; Wilson v. Cunningham, 3 Cal. 241. (2) Instruction numbered 1 was not erroneous in referring to the age of the child. (a) Because the age of the child is stated only by way of illustrating the rule of law; and (b) Because the testimony as to the

child's age was clear and positive, and was in no way contradicted or impeached. Van Natta v. Railroad, 133 Mo. 13; Pope v. Railroad, 99 Mo. 400; Fields v. Railroad, 80 Mo. 203. (3) Instruction numbered 3 stated the law as plaintiff was entitled to have it declared. (a) Because under the law it was the duty of the gripman to give warning of the approach of a train to a street crossing. Steiner v. Traction Co., 134 Pa. St. 199; Railroad v. Robinson, 127 Ill. 9; Hickman v. Railroad, 47 Mo. App. 65.   (b) Because in the situation and under the circumstances as testified to by defendant's witnesses, it was clearly the duty of the gripman to give warning of the approach of the train to Lemp avenue, even if the law does not impose the duty of giving notice at each crossing. (4) Instruction numbered 4, given for plaintiffs, in requiring the defendant's servants to so manage the grip and brakes as to be able to stop the train quickly, should occasion require, was proper under the facts as testified to by defendant's witnesses.   Schmidt v. Railroad, supra; Humbird v. Railroad, 110 Mo. 76.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for respondent.

(1) Paragraph 4, section 1275, of revised ordinances of St. Louis, was improperly admitted in evidence, over the objection of the defendant.   No evidence was offered to show any acceptance of this ordinance.   The acceptance of the special ordinance, granting the defendant the right to change its motive power, was not an acceptance of the general ordinance.   Murphy v. Railroad, 153 Mo. 252.   Acceptance was necessary to make the defendant liable under the general ordinance.   Fath v. Railroad, 105 Mo. 537; Senn v. Railroad, 108 Mo. 152; Sanders v. Railroad, 147 Mo. 411; Byington v. Railroad, 147 Mo. 673; Murphy v. Railroad, 153 Mo. 252.   (2) Instruction numbered 1, given for the plaintiffs, was erroneous in that it

assumed that the deceased was only nine years of age. This was an issue made by the pleadings and should have been left to the jury to determine from the evidence, and should not have been assumed by the court as an established fact. (3) The third instruction given for plaintiff was erroneous. It asserts the proposition that the duty of sounding the gong was an absolute one imposed by law. That the duty arises from the specific facts of each case and not from a positive command of law is shown by the authorities upon the distinction between signals required of steam railways at public and private crossings. In the first, positive law requires it. In the second, it is only required when the circumstances demand it. Gurley v. Railroad, 104 Mo. 227; 3 Elliott on Railroads, sec. 1150. (4) The fourth instruction asserts broadly the proposition that if there was reason to anticipate the sudden and unexpected appearance of children upon the track, and that the gripman was not managing the grip and brakes so as to readily and quickly stop the train should occasion require it, and that the deceased was killed because of the failure of gripman to so manage its grip and brake, the plaintiffs were entitled to recover. We indulge in no mere verbal criticism when we say that it is incomprehensible that one can anticipate that which is unexpected.

VALLIANT, J.—This is the second appeal in this case. At the trial out of which this appeal arises the pleadings and evidence were substantially the same as in that from which the former appeal came and, therefore, for a statement of the case we refer to the opinion on the former appeal, Schmidt v. St. Louis Railroad Company, 149 Mo. 269, which for the sake of brevity we will adopt without repeating it here, noting only points in the proceedings peculiar to our present inquiry. During the trial we are now reviewing the plaintiff read in evidence an ordinance of the city approved April 4, 1889, authorizing

the defendant to change its motive power to cable or electricity, and containing a clause as follows: "The city of St. Louis reserves the right to regulate the running of cars and the rate of speed at which cars shall be run on said railroad." And in that connection was also read the defendant's acceptance of the provisions of that ordinance, date March 4, 1890. Then the plaintiff offered to read the following from the revised ordinances of 1892:

"Sec. 1274. Every person, corporation, company or co-partnership, engaged in the business of transporting passengers from any point to any other point within this city, for hire, on street railways, shall be subject to all the conditions, stipulations and requirements of this article.

"Sec. 1275. The following rules and regulations concerning the running of street railway cars shall be binding upon every person, corporation, company or co-partnership taking out license under the provisions of this article: .... Fourth. The conductor, motormen, and gripmen, driver, or any other person in charge of each car shall keep a vigilant watch for any vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible."

The defendant "objected to the introduction of this ordinance on the ground that it was not shown that the defendant company was at the time of the accident amenable to subdivisions one to four of section 1275, nor that it has any application to defendant." The objection was overruled, exception taken and the ordinance read.

After the defendant had introduced its evidence and the testimony on both sides was closed, the counsel for plaintiff arose and stated to the court in the presence of the jury "that plaintiffs make no claim that the car which ran over the child

was not stopped within the shortest time and space possible after any of defendant's employees became aware of the presence of danger, and that plaintiffs do not base any charge of negligence upon the failure of the gripman in charge of the car to stop the car in the shortest time and space possible after he first became aware of any danger to the child, Maggie Schmidt."

The case was submitted to the jury upon instructions, the correctness of some of which are challenged, and those will be set out hereinafter when we come to consider the objections urged against them. There was a verdict for the plaintiff for $5,000, which, upon defendant's motion for a new trial, was set aside and a new trial awarded, from which action the plaintiffs have taken this appeal. The grounds upon which the court sustained the motion for a new trial were the admissions in evidence of the fourth clause of section 1275 of the revised ordinances, and the giving of instructions one, three and four asked by the plaintiffs. Those are the only features of the trial concerning which any complaint is made by the defendant and the only points to which our attention is drawn in the briefs.

I. When the ordinance in question was offered, the objection to its introduction was placed upon the very vague and indefinite ground that the defendant was not amenable to it, and that it did not apply to defendant. If the counsel making the objection had said as is now said, that the defendant was not bound by the ordinance because there was no evidence to show that it had agreed to be so bound, the attention of the court and opposing counsel would have been brought to the point; but to say that the defendant was not amenable or that the ordinance was not applicable is scarcely more definite than to say the testimony was incompetent and immaterial. The objection should be specific enough to inform the court and opposing counsel of the real ground on which it is based. [Margrave v. Ausmuss, 51 Mo. 566; Primm v. Raboteau, 56 Mo. 407; Shilton v. Dur-

ham, 76 Mo. 434; Peck v. Chouteau, 91 Mo. 138; Drey v. Doyle, 99 Mo. 459.]

There was testimony, however, to show that the defendant had agreed to be bound by that ordinance. When the privilege to change from horse-power to the more dangerous motor was conferred by the city, it was stipulated that the city reserved the right "to regulate the running of cars and the rate of speed," etc., and this the defendant corporation agreed to. It is now argued that that refers only to the speed of the trains; but, we think, it is very much more comprehensive. To regulate the running of the cars includes the power to prescribe the care that is to be taken to run them through the populous streets with as little danger as may be, consistent with a reasonable exercise of the franchise granted, and the ordinance now complained of goes no further. Murphy v. Lindell Ry. Co., 153 Mo. 252, is quoted as authority for the proposition that acceptance of the special ordinance was not acceptance of the general ordinance. But the rule there laid down does not apply to the facts here. It was there held that the giving of bond to indemnify the city against loss by reason of the railroad company's failure to comply with the terms of general ordinances, implied that the company would be bound by the terms of all ordinances which a failure to observe would result in damages to the city, but since a failure to observe the ordinance in question in that case would not so result, it was not covered by the implied agreement. But in the case at bar, we have a franchise granted by the city upon an express condition and accepted by the company upon the terms granted.

But even without that ordinance under the undisputed facts of this case, facts shown as well by the testimony of the defendant as by that of the plaintiffs, the law imposed on the defendant's servant the duty of keeping a vigilant watch, and holding its cars in control to stop in the shortest time and space

possible to avoid such a catastrophe as resulted.   The gripman saw this flock of school children just dismissed from school, some on the sidewalk and some chasing across the street in front of his train; he said that two wagons were on the track in his front and a buggy to the east, so as to shut out his view of the sidewalk; was it not then the dictates of the most ordinary prudence that he should have had his car under control, used whatever appliances he had at hand to sound the alarm of his approach and keep a vigilant watch?   Under the undisputed facts of this case the court would have been justified in instructing the jury that such was the gripman's duty even if there had been no ordinance.   The ordinance in evidence, therefore, added nothing to the case of which the defendant could complain.   But after the testimony was all in, the plaintiff's counsel, seeming to be satisfied that the evidence showed that the gripman did stop the car as soon as he possibly could after actually seeing the child, stated to the court in the presence of the jury that no claim of negligence in that particular was made and asked an instruction to that effect, which was given.   The instruction is as follows:

"7.   The jury are instructed that the plaintiffs in this case make no claim that the car which ran over the child was not stopped within the shortest time and space possible after any of the defendant's employees became aware of the presence of danger, and that plaintiffs do not base any charge of negligence upon the failure of the gripman in charge of the car to stop the car in the shortest time and space possible after he first became aware of any danger to the child, Maggie Schmidt, and you are therefore instructed that that portion of the ordinance of the city of St. Louis, read in evidence, which provides that on the first appearance of danger to persons, either on the track or moving towards it, the car should be stopped in the shortest time and space possible, has no application to the facts of this case,

and the jury are instructed to disregard that portion of the said ordinance, *and that portion of said ordinance is withdrawn from your consideration at the request of plaintiffs.*" The words in italics at the close were required to be added by the court before giving the instruction.

This act on the part of plaintiff's counsel was proper and regular. The ordinance had been introduced in evidence in the plaintiff's case in chief; after the defendant's testimony was in and the plaintiff's counsel was satisfied that it showed that the gripman, after he saw the child in peril, had not neglected to do anything that he could do to avert the danger, frankly so stated and eliminated that point from the case. He could not have been expected to do that before he had heard the defendant's evidence, because he could not know before to what degree the evidence would show that the gripman had performed his duty at that juncture. Therefore, even if there had been error in admitting the ordinance in evidence it was obviated by the statement of the counsel and the instruction given, to the extent, at least, of withdrawing from the consideration of the jury that part of the ordinance relating to the duty of the gripman after the danger became apparent, leaving only the declaration that it was his duty to keep a vigilant watch, which duty under the circumstances the law imposed independent of the ordinance. [Winters v. K. C. Ry. Co., 99 Mo. 509; Hanlon v. Mo. Pac. Ry. Co., 104 Mo. 381; Bunyan v. Citizens' Ry. Co., 127 Mo. 12.] There was nothing in reference to the ordinance that justified the granting of a new trial.

II. The first instruction given for the plaintiffs was as follows:

"1. Upon the issue as to whether the deceased was guilty of negligence contributing to her death, such as will prevent the plaintiffs from recovering in this case, the court instructs you that the law requires all

persons situated as deceased, Maggie Schmidt, was when and before the accident happened, to exercise ordinary care and caution to avoid injury to themselves, and that the absence of such care and caution constitutes negligence. In determining, however, whether the deceased, Maggie Schmidt, was exercising such care and caution, the jury should take into consideration her age and capacity, since the law requires of a child nine years old only such care and caution as might reasonably be expected of one of her age and capacity under similar circumstances. If, therefore, you find that the deceased, Maggie Schmidt, in going upon defendant's track, was using that degree of care which in the ordinary experience of mankind, was to be expected of one of her age and capacity under similar circumstances, then she was not guilty of negligence within the meaning of the law and these instructions. The court further instructs you that the burden of proving that the deceased, Maggie Schmidt, was guilty of negligence contributing to her death is upon the defendant."

The objection offered to this is that it assumes that the child was nine years old. A fact which is really in dispute should never be assumed in an instruction, but a minor point, about which there is no dispute, which, though technically in issue, is virtually conceded may sometimes be assumed without rendering the instruction reversible error. In this case the only evidence as to the child's age was given by her father who said she was nine years old; there was no question nor contradiction of that. She was spoken of by the witnesses for defendant as well as for plaintiff, as a "young child" and "the little girl" all through the trial. The defendant refers to her as such in the instructions it asked. The exact age of the child was not made a point of dispute and a year or two younger or older would have made no difference in the case.

On the point of the child's contributory negligence the

court gave an instruction at the request of the defendant which was in effect that if she was old enough to know that if she got in front of an approaching car she was liable to get hurt, her negligence would defeat a recovery. If that were the test of discretionary age there would be no use in attempting to draw any distinction between the negligent act of a child large enough to be out of its nurse's arms and that of an adult person. That instruction of defendant's was more favorable to it than the law authorized.

The defendant has nothing to complain of on account of plaintiff's first instruction.

III.    The third instruction is:

"3.    The court instructs the jury that it was the duty of the defendant's gripman to sound his gong or bell when approaching Lemp avenue, so as to give notice to persons desiring to cross said street of the approach of the train of cars, and if you find from the evidence that said gripman failed to sound his gong or bell, or give any other warning when approaching said avenue, and that but for his failure to so sound his gong or bell or give such warning, the accident complained of would not have happened, your verdict should be for the plaintiffs, unless you also find from the evidence that Maggie Schmidt, at the time she was killed by defendant's cars, was not using that degree of care in going upon defendant's track which in the ordinary experience of mankind was to be expected of a girl of her age and capacity under the circumstances shown in the evidence."

The complaint of this instruction is that it declares it to have been the duty of the gripman to sound his gong or bell on approaching Lemp avenue, and that if he failed to do so and the injury resulted in consequence, the defendant was liable. The argument for respondent is that there is no statute or other positive law requiring a street railroad gripman to ring his bell or

Schmidt v. St. Louis Ry. Co.

gong at the approach of a street crossing, and, therefore, whether it was incumbent on this gripman to have done so on this occasion depends on the circumstances of the case, and was a question of fact for the jury. The learned counsel say: "We do not say that there may not arise circumstances which will make it the duty of street railway companies to sound a bell when approaching a street crossing. But we do contend that such a duty is not an absolute one imposed by the law in other cases than where proper care for the safety of others require it."

The learned counsel are correct in the abstract proposition of law as stated. There is no statute making it the duty of the gripman to sound the gong or bell at the approach of a street crossing and there is no law making a failure to do so negligence *per se*. Such failure becomes negligence only when the circumstances render the ringing of the bell necessary, and if the circumstances are in dispute, whether the occasion is such as calls for the sounding of the bell is a question of fact for the jury. Now, if instead of instructing the jury as the court in this case did, that it was the duty of the gripman to ring the gong or bell as he approached Lemp avenue, the court had said if the jury find from the evidence that this train of cars was passing north on Broadway on down grade at the rate of twelve miles an hour; that there was a flock of school children on the street, just dismissed from school for the noon recess, some chasing across the street in front of the train and some on the sidewalk; that wagons and a buggy obstructed the gripman's view of the sidewalk to the east, and obstructed a view of the car by persons on the sidewalk; that Lemp avenue ran out of Broadway to the west between Marine avenue and President street so that if any of those children on the east sidewalk were aiming for Lemp avenue they would cross Broadway at that point; and if the jury should also find from the evidence that the

Vol 163 mo—42

defendant's grip car was furnished with a bell or gong as the means of giving warning of the approach of the train, then it was the duty of the gripman under those conditions to sound the gong, as he approached Lemp avenue, and if he failed to do so, and if by his failure the accident occurred, the defendant was liable, the instruction would have been without reproach under the rule as stated by the learned counsel. But is it the duty of the court to require the jury to find facts that are undisputed and established by the evidence of both sides? The facts stated in the hypothetical instruction above given were testified to by the defendant's gripman and other witnesses. Even if we were to carry the rule, forbidding the assuming of facts which the pleadings put in issue, to the extent of holding that an instruction given at the request of one party should not assume facts which the testimony of the other party tends to establish, still the appellate court would not be justified in reversing a judgment on account of such a technical error not "materially affecting the merits of the action." [R. S. 1899, sec. 865.]

We think, under the unquestioned circumstances of this case, it was the duty of the gripman to have sounded his gong on the approach to Lemp avenue, and the inference is strong that if he had done so, the child, who according to the gripman's own evidence probably could not see the car on account of the buggy, would have heard the gong and would not have run into the danger. We see no error in that instruction.

IV. The fourth instruction given for plaintiffs is:

"4. The court instructs the jury that the law requires that the defendant's servants should be watchful to see that the way is clear in the direction in which the train is going, and that, where they have reason to anticipate the sudden and unexpected appearance of children upon or approaching the track, they should so manage the grip and brakes of the cars as to be

able to stop the cars quickly and readily, should occasion require. If, therefore, under all the circumstances detailed in the evidence, you find that there was reason to anticipate the sudden and unexpected appearance of children upon or approaching the track at the intersection of Lemp avenue with Broadway, and you further find that defendant's servants in charge of its train of cars were not so managing its grip and brakes so as to be able to stop said train quickly, should occasion require, and you further find that the death of plaintiffs' daughter was caused by the failure of defendant's servants to so manage said grips and brakes, then your verdict must be for the plaintiffs, unless you should also find from the evidence that Maggie Schmidt, at the time she was killed by defendant's cars, was not using that degree of care in going upon defendant's tracks which in the ordinary experience of mankind was to be expected of a girl of her age and capacity under the circumstances shown in the evidence."

The insistence is that this instruction is inconsistent with instructon No. 7 above quoted and commented on in the first paragraph of this opinion, and inconsistent with the statement of plaintiff's counsel that he "did not base any charge of negligence upon the failure of the gripman in charge of the car to stop it in the shortest time and space possible."

The statement of the counsel referred to, and the instruction given in pursuance of it, had reference only to that part of the ordinance which required the gripman to stop the car in the shortest time and space possible after the danger was seen. But this instruction has reference only to the duty of the gripman in keeping a lookout for danger and holding his machine in control. Surely it can not be contended that under the circumstances of this case it was not the duty of the gripman to be on the lookout and have the appliances for the control of the train in hand. True, when he was going down that

grade at twelve miles an hour with brakes off and gong silent, either unobservant of the children or indifferent to their danger, and the little girl suddenly appeared from behind the buggy, he used every means at hand then to avert the danger, and stopped in the shortest time and space possible. But this instruction relates to his duty before that crisis was reached. The testimony showed that the pedestrians generally, including the school children, going from Broadway into Lemp avenue, passed on the sidewalk on the east side of Broadway until they came opposite the intersection of Lemp avenue and then crossed over as this child was evidently aiming to do. If the gripman had been on the lookout, as this instruction said it was his duty to have been, he would have seen those children on the sidewalk, and if, as he said, the buggy obscured his view, he ought reasonably to have apprehended that some were likely or liable to emerge from behind that obstruction when the crossing for Lemp avenue was reached, and if he had been on the watch then, and holding his train in control, the probabilities are the child would not have been killed.

The language of the instruction is criticized because it makes it the duty of the gripman to anticipate the unexpected. That criticism is hypercritical.

The verdict was unquestionably for the right party and there was no error committed which would justify the setting of it aside.

The judgment is reversed and the cause remanded to the circuit court with directions to overrule the motion for a new trial and enter judgment for the plaintiffs in accordance with the verdict.

*Brace, P. J.*, and *Robinson, J.*, concur; *Marshall, J.*, concurs in the result.