# HENRY FRANK, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, March 3, 1903.

1. **Negligence.** Actionable negligence may often be properly found by the triers of the facts when the acts relied on to establish it are not necessarily nor always negligent acts, but are such as may constitute negligence under given circumstances.

2. ———: RAILROAD CROSSING: DUTY OF ONE CROSSING RAILROAD TRACK. What a person is bound to do before he crosses a railroad track is to employ all the precautions which common prudence dictates to prevent a casualty, and whether he uses those precautions is to be ascertained by the jury from a consideration of the facts.

3. ———: ———: ———. In the case at bar, there is slight if any testimony in this case that respondent could have any better seen or heard the cars by stopping; and that he did stop, as he testified, there was nothing tending to disprove.

4. ————: ————: ————: ————: INSTRUCTIONS. In the case
at bar, the instructions imposed on the respondent the duty of not
only looking and listening, but of using care proportional to the
danger of the surroundings, and the difficulty of detecting a car,
and this was all the law required.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney, Judge.*

AFFIRMED.

*Boyle, Priest & Lehmann, Kiskaddon & Matthews* and *George W. Easley* for appellant.

(1) If a witness who can see testifies that he looked and did not see an object which, if he looked, he must have seen, such testimony is unworthy of consideration. Baltimore Traction Co. v. Helmes (Md.), 1 Am. Neg. Rep. 64-65. Such testimony in the face of the evidence and the physical facts in this case has no probative force and does not raise a question of fact to be submitted to a jury. "It will be disregarded as testimony by the court." Hook v. Railroad, 162 Mo. 581; Kilsey v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 573; Payne v. Railroad, 136 Mo. 575. (2) The first instruction given for plaintiff was erroneous in the following particulars: (a) It improperly charged that the want of a headlight upon the car was a ground of recovery. There is neither ordinance nor statute requiring a headlight to be used on cars in the daytime, and it can not be negligence per se to so operate a car in the daytime. (b) It improperly charged that a failure to ring the bell was a ground of recovery. "There is no statute making it the duty of the gripman to sound the gong or bell at the approach of a street crossing, and there is no law making a failure to do so negligence per se. Such failure becomes negligent only when the circumstances render the ringing of the bell necessary, and, if the circumstances are in dispute, whether the occasion is such as to call for the sounding

of the bell is a question of fact for the jury.'' Schmidt v. Railroad, 163 Mo. 657. There is a total absence of anything like submitting to the jury whether the circumstances were such as to make it the duty of defendant to sound the bell. The instruction makes the duty an absolute one. If it was to be submitted to the jury, it should have also been submitted to them to find the facts which created the duty to sound the bell. (c) It improperly submitted to the jury whether any of the enumerated acts ''constituted negligence.'' (3) The third instruction given for plaintiff excludes from consideration the concurring negligence of plaintiff, and authorizes a verdict for plaintiff, although plaintiff did not ''exercise all care in his power for his own safety.''

If it be true that had plaintiff looked and listened at the proper place, he could have seen and heard the car, then there was no question but that the proximate cause of the injury (on the theory that defendant was negligent) was the concurring negligence of both parties, and there could be no recovery. Hornstein v. St. Louis Transit Co., St. L. Ct. App. (not yet reported).

*Henry A. Baker, Chas. W. Holtcamp* and *R. Lee Mudd* for respondent.

(1) As to contributory negligence, if true, as appellant has unwittingly premised ''that respondent heard nothing of the car, when he might have seen and heard;'' or that, ''if he looked he might have seen it;'' —then appellant's authorities, cited in its brief, might more pertinently apply, as placing the respondent's testimony in the light of acknowledged intervention of unheeded warning, or in conflict with self-evident physical fact; but, recollecting here, as we can not but do, the curve; the intermediate obstruction of view; the respondent's return to his place on the long-coupled twelve-foot pole wagon, after first looking from a point where he ''might have seen,'' as he says he did, if the

car had then turned the curve; and also the inferential acceleration of that car's speed—we then must reflect the fact that this principle of "Contradiction of physical fact," to be pertinent must, in reality, contradict a physical fact; so that the assumption of its truth would present physical impossibility. Weaver v. Railroad, 60 Mo. App. 210; Payne v. Railroad, 136 Mo. 575; Baker v. Railroad, 122 Mo. 590. (2) Now, passing to the instructions, we say primarily that the little complained of goes, at best, with the fact that the essential substance of it all is covered and dispelled by appellant's own quite fulsome set of instructions, or is, otherwise, imputable merely to the court's economy of omission to such extent only as that, but for the modest declination of appellant's counsel to request other instructions at the time, the alleged hiatus might have been even superlatively supplied. Points of refused instructions covered by other instructions (more particularly those of the same party), are, of course, not ground for complaint. 2 Thompson on Trials, 2352; Spry v. Railroad, 73 Mo. App. 216. Otherwise appellant should have requested instructions to cover features of his own particular theory. 2 Thompson on Trials, sec. 2341; Chouquette v. Railroad, 80 Mo. App. 520. (3) There being nothing to obstruct his hearing except the intermediate buildings near the curve, and no noise being shown, and his seeing being unimprovable except to wait until the fog cleared, it is thus even doubtful, very doubtful, whether the element of stopping applies to this case at all. Tabor v. Railroad, 46 Mo. 356; Bragg v. City, 17 Mo. App. 226; Orth v. Darseklein, 32 Mo. 368.

GOODE, J.—The appellant's street car collided with a two-horse wagon on which the plaintiff was sitting, at the intersection of Victor and Ninth streets in the city of St. Louis, October 30, 1899. The accident occurred early in the morning between half past six

and seven o'clock, while the plaintiff was driving the wagon loaded with lumber eastward on Victor street.

The evidence shows Victor street runs east and west and Ninth street north and south; also that there was a curve in Ninth street about one hundred and fifty feet below the crossing of the two streets, so that one driving on to Ninth from the west would have his vision obstructed somewhat by the houses on its west side so as to prevent his seeing a car coming along said curve until he had advanced some distance into the street.

The negligence charged is the failure to give warning by ringing the gong of the car, or to have a headlight burning; failure to slacken the speed of the car when approaching the crossing and running at too high a speed.

The defense of contributory negligence was interposed, the answer charging the plaintiff drove on the track in such close proximity to the car that it was impossible for the motorman to check the car soon enough to avoid a collision.

There was much testimony that the morning was very foggy and that a person could only see a short distance, and some testimony that the fog had about cleared up when the collision occurred. There was also much testimony that the car was running at a slow speed and some that it was running fast. The testimony was about evenly balanced as to whether the motorman sounded the gong; some passengers on the car and persons near where the accident happened, swore the gong was not sounded at all, while the motorman and other witnesses swore it was constantly sounded as the car approached Victor street. No headlight was burning. Some witnesses swore the car ran thirty feet past the wagon after striking it, but the motorman swore it only ran four or five feet past.

Plaintiff testified that before driving on the track he not only stopped his wagon but got off and went

ahead to look for a car, but neither saw nor heard one; that he resumed his position on the wagon and drove rapidly on the track in order to cross before a car came along, and that he did not see or hear one until he was struck. He testified also that there was another wagon just ahead of his, the driver of which also stopped before venturing across the track. The motorman swore the fog had lifted just before he started on his run, but when he approached Victor street he could see only a few feet ahead; that there were intervals of fog and bright spots all the way up Ninth street, but the fog was pretty thick at Victor and that he could not see more than four or five feet ahead as he approached it. On this account he was running slowly and ringing his bell constantly because that was all he had to depend on; he said his car was not making more than four or five miles an hour and that he had only a glimpse of plaintiff sitting on the hounds of the wagon, before he ran into him.

Besides instructing as to the conventional definition of the words "ordinary care" and the elements of damage to be considered if the finding was for the plaintiff, the court told the jury in the first instruction given for the plaintiff, that if the morning was unusually foggy, and the car ran against the plaintiff through the negligence of the servants operating it in not giving warning of the approach of the car at the crossing of Victor and Ninth streets by ringing the gong, or not burning the headlight, or the failure of the motorman to slacken the speed of the car as he approached Victor street, if the jury believed from the evidence that either of said acts or omissions occurred, and further believed the same constituted negligence by which plaintiff was injured, while he was exercising ordinary care and prudence for his own safety, their verdict should be in his favor. That although the jury believed plaintiff did not exercise all the care in his power for his safety, but that he did not fail to use care to such an extent

as to directly contribute to cause his injury, and further believed the accident would not have occurred but for the defendant's negligence, if the jury found the defendant was negligent, the verdict must be for the plaintiff.

For the defendant the court instructed, first, if the jury believed the motorman, on account of the fog, was running at a slow speed and that he continually sounded his gong and kept a good lookout for any one on the street and did all he could to avert the accident; and if, notwithstanding all precautions, the density of the fog prevented the latter from seeing the plaintiff in time to stop the car and avert the collision, the verdict must be for the defendant. Second, if the morning was foggy so that the view of an approaching car was obscured and there was a curve south of the intersection of the two streets, and plaintiff was familiar with the locality and knew of the curve, it was his duty before attempting to cross the track to exercise greater care than he would have been bound to use if the morning had been clear and there had been no curve in the track. Further, if the jury believed he failed to take such precautions as an ordinarily prudent person would have taken under such circumstances, and in consequence of the failure came into collision with the car, he could not recover. Third, that though the jury might believe the motorman did not slacken speed at the approach of Victor street, but was running at a great speed, yet if they found it was foggy and plaintiff by the exercise of ordinary care, considering the fog, might have seen or heard the approaching car in time to avoid a collision, the verdict must be for the defendant.

Of its own motion the court instructed the jury that if they believed from the evidence the morning was very foggy so the view of approaching cars was obstructed at the intersection of Victor street with the railway track, it was the duty of the plaintiff, before attempting to cross the track, to look and listen for an

approaching car *and to stop if to stop was necessary in order to see and hear,* and if he failed to do so and drove his wagon on the track in such close proximity to the car that the defendant's servants were unable to avert a collision, the verdict must be for the defendant. Further, that in determining whether plaintiff did stop and look and listen, the jury must take all the facts and circumstances into consideration and the testimony of the other witnesses as well as the testimony of the plaintiff himself. Said instruction was like one requested by the defendant and refused, except the italicised words, which were inserted by the court, and the omission of a clause that the jury were not bound to accept the testimony of plaintiff. The essential difference, about which a point is made here, is that the instruction as asked by the defendant, charged the jury unqualifiedly that it was the duty of the plaintiff to stop, whereas the one given by the court only bound him to stop if the jury found it was necessary to do so in order to see and hear.

The court also gave an instruction of its own motion that if the morning was foggy and the view obscure along defendant's track, it was the duty of the defendant's motorman to exercise greater prudence in running his car so as to avoid colliding with persons on the street, but also his duty to run so as to deliver passengers at their destinations as nearly on time as the circumstances would permit; that the motorman had a right to assume persons approaching the track would exercise greater care than if the morning was clear, and if the jury believed the motorman, on account of the fog, ran slower than usual, *at such a rate of speed as was reasonable under the circumstances,* constantly sounding his gong and keeping a good lookout for persons on the track and *did all in his power to avert the accident,* yet, notwithstanding these precautions, on account of the density of the fog did not see plaintiff's wagon until too late to avoid a collision, the verdict

must be for the defendant, even though the jury believed plaintiff stopped to look and listen before driving on the track, but failed to see or hear the car approaching. Said instruction was like one requested by the defendant except the italicized words, which were inserted by the court.

At the close of plaintiff's testimony the defendant requested an instruction in the nature of a demurrer to the evidence, which was overruled.

The jury returned a verdict for the plaintiff assessing his damages at twenty-five hundred dollars; judgment was entered accordingly and an appeal taken to this court.

Appellant contends the demurrer to the evidence should have been sustained because no actionable negligence on the part of its carmen was established by the respondent's evidence; that there was neither evidence of an excessive rate of speed nor of failure to slacken the speed of the car as it approached the crossing, and that it was not negligence to run without a headlight or without sounding the gong.

There was some evidence of excessive speed considering the obscurity caused by the fog, as there was also evidence of neglect to slacken the speed as the car approached the intersection of the two streets. It is true, having no headlight did not constitute negligence as a matter of law; neither did failure to sound the gong. There was no absolute requirement that a headlight should be burning at that time of day, nor that a gong should be sounded. This only shows, however, that there was no such breach of a mandatory duty by the carmen as justified the court in instructing that negligence on the part of appellant had been established. But taking into account the difficulty of seeing but a few feet ahead in the fog, as testified to by the motorman and other witnesses, the failure to have a headlight burning or to sound the gong were facts for the jury to weigh and from which they might infer negligence.

Actionable negligence may often be properly found by the triers of the facts when the acts relied on to establish it are not necessarily nor always negligent acts, but are such as may constitute negligence under given circumstances. The question in this and most similar cases is: Did the carmen use such precautions to avoid injury to persons on the street as ordinary prudence demanded, all the circumstances considered? Brown v. Railroad, 50 Mo. 461; McMahon v. Express Co., 132 Mo. 641; Tetherow v. Railroad, 98 Mo. 74; Cohn v. Kansas City, 108 Mo. 387.

The Supreme Court held an instruction was rightly given that the motorman should have sounded his gong and was guilty of actionable negligence if he omitted to do so, in a case where the car was approaching a crossing much used by school children, when the conditions were such that the motorman's gaze was obstructed. Schmidt v. Railroad, 163 Mo. 645. That decision is precisely in point; but in the present case the trial court, instead of arbitrarily instructing to that effect, referred to the jury the issue of whether a warning should have been given by sounding the gong.

It will be observed from the recital of the contents of the first instruction that the learned circuit judge did not charge the jury that any of the alleged acts of negligence amounted to negligence, but left it to the jury to say; first, whether the appellant was guilty of any of the acts or omissions; second, whether, if so, those omissions constituted negligence; third, whether they caused any of the injuries received by the plaintiff; fourth, whether the plaintiff was at the time exercising due care. That was a careful and correct charge.

The rule that the testimony of a party will be disregarded and held for naught when the physical facts and surroundings show it is impossible for his testimony to be true, is invoked against the testimony of respondent that he stopped to look and listen for cars

but did not see the one that ' struck him. The most
cursory glance at the evidence in this case shows the
physical facts were such as not to discredit, much less
refute respondent's testimony. Take the evidence ·of
the motorman, for instance; he swore that at the in-
stant of the collision he could not see more than four
or five feet ahead. If that be true, it is equally true the
respondent could not see the car when he looked. And
if the gong was not sounded he could not hear it. There
is no merit in this assignment and it' is overruled.'

Several instructions of correct form were given as
to the effect of contributory negligence on the part of
respondent, and the jury must have understood that if
respondent was not taking ordinary care of himself
when he was hurt he had no case, though the third one
. given for the plaintiff was somewhat awkwardly drawn.
But it undoubtedly stated the law in declaring that any
negligence of which the plaintiff may have been guilty
would not bar a recovery unless it contributed to pro-
duce the accident.

Appellant insists the jury ought to have been told,
without qualification, that it was respondent's duty to
stop as well as to look and listen. We think, however,
the court's amendment of the appellant's instruction,
which bound the respondent to· stop in case it was nec-
essary to do so in order to see or hear, was accurate.
There is no absolute duty incumbent on a person about
to drive or walk across a railroad track to stop before
doing so; and while circumstances may arise, perhaps,
which will justify a court in declaring a plaintiff was
negligent if he did not stop, the general rule, and the
one applicable to the present case, leaves it to the jury
to say whether it was necessary for him to stop in order
to use, to the best advantage, his eyes and ears. What
a person is bound to do before he crosses a railroad
track is to employ all the precautions which· common
prudence dictates to prevent a casualty; and whether
he uses those precautions is to be ascertained by the jury

from a consideration of the facts. Dlauhi v. Railroad, 139 Mo. 291.

There is slight, if any, testimony in this case that respondent could have any better seen or heard the car by stopping; and that he did stop, as he testified, there was nothing tending to disprove. At all events, it was for the jury to say whether that precaution was indispensable. Russell v. Receivers A. T. & S. F. R. R., 70 Mo. App. (K. C.) 88; Donohue v. Railroad, 91 Mo. 357; Kelly v. Railroad, 88 Mo. 534; Petty v. Railroad, 88 Id. 306; Stepp v. Railroad, 85 Mo. 235; Huckshold v. Railroad, 90 Mo. 557; Johnson v. Railroad, 77 Mo. 546; Taber v. Railroad, 46 Mo. 353; Baker v. Railroad, 122 Mo. 533.

The instructions imposed on the respondent the duty of not only looking and listening, but of using care proportionate to the danger of the surroundings and the difficulty of detecting a car, which we think is all the law requires. He had to take only reasonable precautions to avoid injury. Winters v. Railroad, 99 Mo. 517.

The court told the jury that in ascertaining whether or not plaintiff did stop to look and listen, they should take into consideration all the facts and circumstances of the collision and the testimony of the other witnesses, as well as the plaintiff's own testimony. The appellant complains because that charge was not given in the form requested by it; to-wit, that the jury should take into consideration all the facts and circumstances of the collision, together with the testimony of the other witnesses, but were not bound to believe plaintiff's testimony. The jury was entitled to weigh the plaintiff's testimony as well as all other testimony in the case, and it should not have been invidiously commented on as the appellant requested. The court's charge was correct.

As to the clause contained in one of the instructions given by the court of its own motion, that if the jury found, among other facts, *the motorman did all in his*

*power to avert the accident,* we merely state that the first instruction requested by and given for the defendant contained exactly the same words.

On the whole this case appears to us to have been referred to the jury with exceptionally careful, lucid and accurate instructions, and, as the controversy involved contradictory evidence, it was one for the jury's determination.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.