# MARY W. MAGINNIS, Appellant, v. MISSOURI PACIFIC RAILWAY. COMPANY.

### Division Two, July 18, 1916.

1. **NEGLIGENCE: Liability: Last-Chance Doctrine.** If the traveler, about to cross a railroad track in front of an approaching train, so suddenly changed his position of safety into one of danger that the collision with him could not have been avoided by the exercise of the care which the circumstances required the railroad company to use, there can be no recovery for his consequent death; on the other hand, although himself careless, if he was in a perilous position and oblivious thereto, and this was known, or should have been known to the company, and it failed to use the means reasonably at hand to avert the injury, it is liable under the last-chance doctrine.

2. **————: Liability Notwithstanding Adverse Testimony of Own Witness.** The fact that if the testimony of one of plaintiff's own witnesses is true he cannot recover does not preclude him from establishing a case by the testimony of other witnesses, even though contradictory of that of the one offered for the express purpose of establishing the main point at issue.

3. **————: Demurrer to Evidence: Rule: Inference of Fact.** A demurrer to the evidence admits whatever facts the evidence tends to prove, and the court in passing upon it must make every inference of fact in favor of the party offering the evidence which the jury might with any degree of propriety have made; and if, when viewed in that light it is sufficient to support a verdict, the demurrer must be overruled. To give full effect to the rule the court cannot weigh conflicting evidence, nor make inferences of fact in favor of the defendant to countervail or overthrow inferences of fact in favor of plaintiff.

4. ———: **Pedestrian on Track.** Where there is testimony that a pedestrian, at a recognized road crossing, was seen by the engineer from the time he was within sixty feet of the crossing; that after he came upon the west end of the crossing he proceeded east on the track a distance of sixteen feet; that he was seen by the engineer to be apparently oblivious of his danger and unconscious of the approach of the train, from behind, it was the plain duty of the engineer to take the most appropriate action to avoid injuring the man, and that duty began as soon as it was apparent that he was intent upon placing himself in a position of danger; nor could action be postponed until the man actually went upon the tracks, because, under the circumstances, the danger zone extended beyond those limits.

5. ———: ———: **Warning.** The engineer of a railroad train should at least give a warning as soon as the danger to a pedestrian first becomes apparent.

6. ———: ———: **Confusion.** Where th pedestrian, during the time he was traveling on foot a distance of 70 to 87 feet across a railroad crossing and on the tracks, was seen by the engineer of the train approaching from behind, the engineer is not to be excused from taking some appropriate action to avoid injuring the man, by the fact that surprise at seeing a pedestrian in danger sometimes creates mental confusion and forestalls instant action.

6. ———: **Anticipating Persons on Track.** It is the duty of an engineer of a railroad train to anticipate the possible, and even probable, presence of persons at a public crossing, and to be in a position not to be surprised when they are seen by him to be on the track or in a position of danger, and to act quickly and intelligently.

Appeal from St. Louis City Circuit Court.— *Hon. George C. Hitchcock,* Judge.

REVERSED.

*Glendy B. Arnold* for appellant.

(1) The demurrer to the evidence was properly overruled. The case was one for the jury. Maginnis v. Railroad, 165 S. W. 849. (2) The facts and the law of this case are *res judicata.*

*James F. Green* for respondent.

(1) A clear case of contributory negligence on part of Maginnis was disclosed by the evidence. There was no showing of facts justifying the application of the humanitarian doctrine. Keele v. Railroad, 258 Mo. 62; Burge v. Railroad, 244 Mo. 76; Dyrcz v. Railroad, 238 Mo. 33; Bennett v. Railroad Assn., 242 Mo. 125; McGee v. Railroad, 214 Mo. 543; Laun v. Railroad, 216 Mo. 563; Stottler v. Railroad, 214 Mo. 619; Holland v. Railroad, 210 Mo. 351; King v. Railroad, 211 Mo. 13; Sanguinette v. Railroad, 196 Mo. 466; Green v. Railroad, 192 Mo. 131; Markowik v. Railroad, 196 Mo. 550; Ries v. Transit Co., 179 Mo. 1; Farris v. Railroad, 167 Mo. App. 392; Newton v. Railroad, 152 Mo. App. 167; Burnett v. Railroad, 172 Mo. App. 51; Gumm v. Railroad, 141 Mo. App. 313; Dey v. Railroad, 140 Mo. App. 461; Kelsay v. Railroad, 129 Mo. 365; White v. Railroad, 159 Mo. App. 508; Vonbach v. Railroad, 171 Mo. 338; Guyer v. Railroad, 174 Mo. 344. (2) The court did not err in sustaining the motion for a new trial for the reasons assigned. See cases cited above.

REVELLE, J.—This is an action for damages on account of the death of plaintiff's husband, who was killed by defendant's train while attempting to cross over the tracks of its railroad at Glendale in St. Louis County.

The negligence charged is that the defendant's servants in charge of the train failed to keep a careful and vigilant watch for the deceased as he was approaching and crossing the tracks, and in failing to slow down or slacken the speed of said train so as to permit the deceased to cross in safety, and in failing to warn the deceased of the approach of the train after defendant's servants

saw, or by the exercise of ordinary care could have seen, the deceased while approaching and attempting to cross the tracks.

The answer, in addition to containing a general denial and an admission of the incorporation of defendant, pleaded contributory negligence and an unavoidable accident.

Upon the first trial a verdict for $2,000 was returned by a jury in plaintiff's favor, and upon an appeal the judgment, in accordance therewith, was reversed, and the cause remanded by the St. Louis Court of Appeals because of erroneous instructions. [Maginnis v. Missouri Pacific Ry. Co., 182 Mo. App. 694.]

Upon the second trial a verdict in the sum of $2,000 was again returned, but this was set aside by the trial court and a new trial ordered on the ground that the court should have sustained a demurrer to the evidence. From this action the plaintiff appealed, and upon the second hearing a majority of the St. Louis Court of Appeals sustained the action of the trial court, while one member dissented, and the cause was, at the instance of the dissenting judge, certified to us for final decision. Since the case involves but one question, namely, the sufficiency of the evidence, the facts will be stated and dealt with in the opinion.

It is difficult, indeed, to arrive at a full and complete understanding of the question presented for our decision, owing to the failure of the parties to incorporate in the record or file for our inspection the numerous photographs and diagrams admitted in evidence, and constantly referred to by the witnesses. This renders a portion of their evidence so vague and indefinite as to make it almost unintelligible.

The members of the Court of Appeals differed as to the facts disclosed, the majority holding there was no substantial conflict in the evidence, and under it plaintiff could not recover, while one member was of the mind that there was a conflict, and that the case was one for the jury. When reduced to its last analysis we find the controversy in a narrow compass. There is no difficulty in determining the principles of law applicable to the case. If the deceased so suddenly transformed his position of safety into one of danger that the accident could not have been avoided by defendant when exercising the degree of care called for by the circumstances, the plaintiff cannot recover. On the other hand, if the deceased, although himself careless, was in a perilous position and oblivious thereto, and this was known, or should have been known, to the defendant, and it failed to use the means reasonably at hand to avert the injury, it is liable under the last-chance doctrine.

The accident occurred at a recognized and authorized crossing of the railroad tracks by a public highway, a place where a clear track could not be expected or relied upon. This phase, however, so important and decisive in many cases, is unimportant here, because the engineer admits that he actually saw and carefully observed the actions of the deceased while he was approaching the point of the accident and at the times, upon plaintiff's theory, when warnings should have been but were not given.

As against the demurrer the following facts are established without question. Respondent was maintaining double railroad tracks through Glenwood, the *locus in quo,* running east and west and intersecting at about right angles a public dirt road running north and south, and known as Berry Road. East-

bound trains are operated on the south track, and west-bound trains on the north track, these being ten or twelve feet apart. The view from the track for at least a half mile west of the crossing is unobstructed, and the train at the time in point was coming from the west. On the south side of defendant's tracks and right of way, and abutting the west side of Berry Road, is located the store of one John P. Evers, facing the east. The northeast corner thereof is about fifteen feet from the south line of defendant's right of way, and about 56 and one half feet south of the south rail of the south or east-bound track. In front of this store and along the west side of Berry Road is a plank sidewalk extending to within 22 feet of the southwest point of the railroad crossing, and to within 17 feet of the south rail on a direct line, the southwest point of said crossing being east and north of this terminus of the foot walk. Between the end of this walk and the railroad crossing the ground surface was of cinders and dirt. The crossing consisted of the tracks and planks laid both inside and outside of the rails, these planks being 16 feet in length and lying parallel with the rails. On the north side of the tracks the board sidewalk was on the east side of Berry Road, so that the ordinary course of a pedestrian going from the south to the north would be north along the plank walk to the end thereof, thence northeast in a diagonal direction across the tracks to the east side of Berry Road, where he would reach a plank walk extending north, there being no sidewalk on the east side of Berry Road south of the track and no sidewalk on the west side of Berry Road north of the track. Berry Road was 40 feet in width, but only about ten feet thereof was generally used for travel. At a point 17 feet south of the east-bound

track, and about 30 feet east of the traveled part of Berry Road, is located a small station-house for the use of defendant's patrons, the northwest corner thereof being also about 90 feet from the northeast corner of Evers' store. The plank sidewalk at a point 20 or 30 feet south of the track makes a bend or turn towards the northeast, and in the direction of the southwest corner of the railroad crossing.

The evidence is undisputed that immediately preceding the accident the deceased walked north on the plank sidewalk to *some* point beyond the northeast corner of Evers' store and south of the east-bound track. The point to which he thus walked and the course he then took are the questions on which it is said by the plaintiff and one member of the Court of Appeals there is a conflict of evidence, it being contended that a part of the evidence shows that he proceeded on the plank walk to or near the end thereof, thence to the southwest corner of the crossing, thence down the tracks for a distance of 16 feet to the end of the planks on the crossing, and was there killed. The defendant contends, and in this a majority of the Court of Appeals concurs, that all the evidence shows that he did not so proceed, but that when near the northeast corner of Evers' store he crossed the Berry Road, going east in the direction of the station-house, and so continued until he reached a point on the east line of Berry Road, when he suddenly, and without previous manifestation of such an intention, turned directly north onto the track, where he was killed. There seems but little difference of opinion as to the point where he was struck by the train, this being at the northeast end of the railroad crossing.

268 Mo.—43

As we read and understand the testimony of Evers, it is that immediately after the train struck the deceased, and after it had passed over the crossing, he saw the remains lying on the north or west-bound track. It had rained during the preceding night and there was mud on the road, cinders and crossing. After the train finally left he and others located and traced the foot-prints of deceased, identifying them by means of a break or hole in the sole of his shoe which left definite impressions on the muddy cinders and planks. The first of these foot-prints were found at or near the southwest corner of the railroad crossing, the others (there being six in all) were on and along the crossing going east and parallel with the tracks to the east end of the crossing boards at the northeast corner of the crossing where he was struck.

The engineer testified that he first observed the deceased as he emerged from in front of the Evers' store, when about three feet from the east end thereof; that he was in a run and going north on the plank walk, but after advancing three or four steps thereon and before reaching the end of the walk, he diverted his course, turning eastward and diagonally in the direction of the station-house. He proceeded in that general course until he crossed the Berry Road and reached a point just opposite the plank walk located on the north side of the track, this placing him on the east side of Berry Road, when he suddenly turned north and went onto the track where he was struck. He further says that from the conduct and actions of the deceased it was his impression that he was endeavoring to reach the station with the intention of boarding a train; that he gave the crossing signal when within 80 rods of the crossing, and when within from 40 to 70 feet of the crossing he gave the

alarm signal or warning. There is evidence from other witnesses that he did not give a crossing signal, and that the only warning or signal given at any time was the aforesaid alarm signal.

There can be but little doubt that if the engineer's evidence is to be accepted as the *only* probative evidence, the plaintiff cannot recover, because if the deceased took the course described by the engineer, and the engineer gave the warnings and signals to which he testified, he could have done nothing more that would have prevented the accident, and the last-chance doctrine would not apply. Under the facts detailed by him he was warranted in acting on the presumption that the deceased heard the warnings and knew of the approach of the train, and that he would not suddenly, and without any manifestation of such an intention, change his then position of safety into one of danger. [King v. Railroad, 211 Mo. 1; McGee v. Railroad, 214 Mo. 530; Burge v. Railroad, 244 Mo. 76; Guyer v. Railroad, 174 Mo. 344; Dyrcz v. Railroad, 238 Mo. 33.]

While it is true the plaintiff introduced the engineer as his own witness, this does not preclude him from establishing a case by other testimony, even though it is contradictory of that which he first offered. While he would not be permitted to impeach his witness, he may show by other witnesses what he contends to be the true facts. [Phelan v. Paving Co., 227 Mo. 666; Knorpp v. Wagner, 195 Mo. 637; State v. Shapiro, 216 Mo. 359.]

The trial court sustained the motion for new trial upon the ground that it had erred in not sustaining a demurrer to the plaintiff's evidence, and in reviewing such action it is well settled that we must make every inference of fact in favor of the plaintiff. A demurrer to the evidence, so

run the rulings, admits the facts the evidence tends to prove, and in passing upon it the court is required to make every inference of fact in favor of the party offering the evidence which the jury might with any degree of propriety have inferred in his favor, and if, when viewed in this light, it is sufficient to support a verdict the demurrer should be overruled. [Troll v. Drayage Co., 254 Mo. 332, l. c. 337.] To give full effect to this rule we cannot weigh conflicting evidence, nor can we make inferences of fact in favor of the defendant to countervail or overthrow inferences of fact in favor of the plaintiff. After careful consideration of the evidence, it is our opinion that the facts testified to by other witnesses offered by plaintiff are clearly contradictory of the statements of the engineer, and if such are believed by the fact triers, as they evidently were in this and the preceding trial, the plaintiff is entitled to recover. If the deceased's foot-prints were as described by other witnesses it was impossible for him to have pursued the course or gone upon the track in the manner and at the place testified to by the engineer. In the first place, the point at which the engineer says the deceased suddenly turned, and from which he went onto the track is, according to the testimony of one of defendant's employees, about twelve feet east of the east end of the railroad crossing and where the deceased was killed. According to his testimony the deceased was at no time on the west side or end of the crossing, whereas his foot-prints disclose that it was at this place that he entered upon the track. They further show that he proceeded down the track to the east end of the crossing, a distance of 16 feet, all of which was impossible if the engineer is correct in his statements. Another thing which the jury had a right to consider in

determining whether the engineer was telling the truth, is that, according to his testimony, he saw the deceased when he was about three or four feet from the northeast corner of Evers' store.

A. S. Butterworth, who was an employee of the defendant and who made measurements in this case at its instance, testified that, owing to the manner in which the Evers' store was located, the rear thereof being within a few inches of the right-of-way, while the front was about 15 feet away, and owing to a certain bill-board located to the rear of this store, a person would have to be approximately at the north end of the board walk before he could have a clear view 500 feet west. If this testimony is true, then the deceased proceeded north on the sidewalk approximately to the end thereof, otherwise he could not have been seen by the engineer when the engineer says, and this would tend to corroborate the theory of the footprints; or if he left the sidewalk at the place where the engineer says, then, in taking the course by him described the measurements show that the deceased, a man of 69 years of age, traveled on foot, and over muddy ground, a distance of 87 feet, while the train, running at a speed of 45 miles per hour, covered 500 feet. While this is not utterly impossible, it is capable of an inference decidedly favorable to plaintiff's cause.

Unless we reject as unworthy of belief or as having no probative force the evidence of witness Evers relative to the foot-prints and the course they indicate the deceased pursued, we find there is substantial evidence tending to show that the deceased walked north on the plank walk to some point, and from there to a point from which he passed upon the defendant's tracks at the *west end* of the crossing, and then proceeded east on the

track to the northeast end of said crossing, a distance *on the track* of 16 feet. The testimony of the engineer shows that he actually observed the deceased from the time he was within at least 60 feet of the crossing, if he traveled as the footprints indicate, and until he came upon or near the tracks. His evidence also shows that the deceased was apparently oblivious to his danger and unconscious of the approach of the train. Under such circumstances his duty was plain and began when it became apparent to a prudent operator that the deceased was intent on so acting as to place himself in a position of danger. He could not defer action until the man actually went upon the tracks, because, under the circumstances detailed the danger zone extended beyond these limits. He should have at least given a warning when the impending danger first became apparent, thereby bringing the unwary traveler to a realization of his danger and duty to act, and this, according to some of the evidence, the engineer did not do. [Eppstein v. Railroad, 197 Mo. 720; Degonia v. Railroad, 224 Mo. 564.]

The circumstances and physical facts show, assuming, as we think the evidence justifies, that the deceased traveled the course indicated by the footprints, the engineer saw, and under the law governing this case was bound to see, because charged with looking, and looking was seeing, the deceased in a perilous position in sufficient time to have given proper warnings, thereby preventing the accident. Surprise on the part of the engineer at the appearance of the deceased and that consequent mental confusion which sometimes prevents instant action in the most intelligent way (Underwood v. Railroad, 182 Mo. App. 252; McGee v. Railroad, 214 Mo. 530) cannot be pleaded here, because during

the time the deceased was traveling on foot a distance of from 70 to 87 feet, he was constantly under the eye of the engineer. Instead of expecting a clear track at this public crossing, the engineer had to anticipate the possible, and even probable, presence of persons, and he was required to be in a position to not be surprised and to act quickly and intelligently.

The evidence also shows that the air or emergency brakes were not applied until the train was within 40 feet of the deceased, and that the train was brought to a stop within 600 feet after the application of such brakes. It is also in evidence that the speed of the train could have been reduced to 20 miles an hour within a distance of from three to four hundred feet, which is less than the distance at which the deceased could be seen by the engineer while approaching the track.

Finding from the present record the facts as above stated, the Court of Appeals in its opinion on the first appeal of this case, where a judgment for the plaintiff was reversed because of erroneous instructions, found that the case was one for the jury. The law applicable to these facts and inferences is well and fully stated in that opinion. (Maginnis v. Missouri Pacific Railway Co., 182 Mo. App. 694), and a repetition would be but fruitless toil for both ourselves and the profession. Giving to the plaintiff the favorable inferences which the facts reasonably warrant, and this we are required to do, it is our opinion that the court erred in holding the evidence insufficient to sustain the verdict.

It is accordingly ordered that the action of the trial court in setting aside the verdict and granting a new trial because of the insufficiency of the evidence, be reversed and set aside, and that a judgment in accordance with the verdict be rendered. All concur.