## HULDA J. MURRELL v. KANSAS CITY, ST. LOUIS & CHICAGO RAILROAD COMPANY, Appellant.

### Division Two, July 5, 1919.

1. **CONSTITUTIONAL LAW: Title: Leasing Railroad.** The title to an act passed in 1870, entitled, "An Act to amend chapter sixty-three of the General Statutes, entitled 'of railroad companies,' so as to authorize the consolidation, leasing and extension of railroads," was broad enough to authorize a designation in the body of the act of the terms and conditions upon which such leases should be made, and to include a provision that "a corporation in this State leasing its road to a corporation of another state shall remain liable as if it operated the road itself."

2. ————: **Speed Ordinance: Six Miles An Hour: Unreasonableness.** An ordinance limiting the speed of railroad passenger trains to six miles an hour at a much-used public-street crossing, 1200 feet from the station, in a city of the fourth class containing 2700 inhabitants, is not unreasonable, nor an unlawful interference with interstate commerce, but a needed protection of the public at such crossing.

3. **DEMURRER TO EVIDENCE: Practice.** Where defendant, at the close of plaintiff's case in chief, offers a demurrer thereto, and upon its being overruled puts in its own evidence, the sufficiency of the evidence to sustain the verdict must be determined from all the evidence in the case; and the appellate court, in considering the demurrer, will indulge every inference in favor of the verdict which men of average intelligence and fairness might legitimately draw from the proven facts.

4. **NEGLIGENCE:** Contributory: Demurrer to Evidence: Proven Facts: Humanitarian Rule. Where there was substantial evidence tending to prove (1) that the servants in charge of the train were negligent in failing to ring the bell, and keep it ringing, as required by statute, as it approached the public-street crossing where plaintiff's husband was killed, (2) that they were guilty of negligence in failing to give proper and timely danger signals after he was known to be in peril, (3) that they were guilty of negligence in violating the six-mile speed ordinance and which they continued to violate until he was struck by the train, (4) that they were guilty of common-law negligence in running the train, at the time and place of the accident, at a dangerous and unsafe rate of speed, (5) that the engineer was negligent in failing to reduce the rate of speed after seeing deceased in peril and

apparently oblivious to the approaching train, and (6) that said servants were likewise negligent in failing to give danger signals with a whistle, so as to arouse in deceased a realization of the danger into which he was moving, no demurrer to the evidence can be sustained, although it be conceded that deceased, at the time and place of the accident, was guilty of negligence that directly contributed to his own death.

5. ———: **Duty of Engineer: Inference.** In the absence of evidence to the contrary, the jury have the right to draw the inference that the engineer of a passenger train entering a town was at his place in the cab, looking towards the station, since he owed that duty to his passengers, as well as to members of the public who might be upon the track at a public-street crossing.

6. ———: ———: **Inference from Sounding Whistle.** Where defendant offers evidence tending to show that the station whistle was sounded and the bell was rung before the train reached the public-street crossing, the jury have the right to infer that the engineer and fireman were at their respective places in the engine cab; and hence they have the right to infer, the view being clear and the track straight, that the engineer saw deceased in peril when the train was 500 feet away and that he was moving to a place of danger on the track at the street crossing, apparently oblivious to the approach of the train.

7. ———: ———: **Failure to Testify: Other Inferences.** Where the view was unobstructed for 500 feet before the train reached the public-street crossing where plaintiff's husband was struck, the jury have the right to take into consideration the fact that the engineer and fireman, who of all persons were best prepared to give the actual facts concerning deceased's movements, were not produced as witnesses.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*Joshua Barbee* and *Scarritt, Scarritt, Jones & Miller* for appellant.

(1)   Sec. 3078, R. S. 1909, is unconstitutional, for the reason that the bill when enacted contained more than one subject which was not clearly expressed in the title, as provided by Section 28, Article 4, Constitution of Missouri. Williams v. Railroad, 233 Mo. 666; Witz-

mann v. Railroad, 131 Mo. 612; St. Louis v. Bray, 213 Mo. 131; Shively v. Lankford, 174 Mo. 545; State v. Coffey Company, 171 Mo. 634; Gulf Ry. Co. v. Stokes, 91 S. W. (Tex.) 328. (2) The speed ordinance of six miles an hour of Higginsville is unreasonable, unconstitutional and an attempt to interfere with and regulate interstate commerce, contrary to Section 8 of Article 1 of the Constitution of the United States. Lusk v. Town of Dora, 224 Fed. 630; Zumault v. Railroad, 71 Mo. App. 670; White v. Railroad, 44 Mo. App. 540; Plattsburg v. Hagenbush, 98 Mo. App. 669; Murphy v. Railroad, 153 Mo. 252; Byington v. Railroad, 147 Mo. 673. (3) The trial court erred in refusing defendant's requested peremptory instructions at the close of plaintiff's evidence, and at the close of all the evidence, for the reasons, (a) the negligence of deceased Murrell barred recovery, and (b) no actionable negligence was shown against defendant. Reeve's Admr. v. Railroad, 251 Mo. 169; Keele v. Railroad, 258 Mo. 78; Laun v. Railroad, 216 Mo. 563; Pope v. Railroad, 242 Mo. 232; Moore v. Lindell Railway, 176 Mo. 538, 546; Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673; Schmidt v. Railroad, 191 Mo. 215; Dyrcz v. Railroad, 238 Mo. 33; Lane v. Railroad Co., 132 Mo. 4; Kelsey v. Railroad, 129 Mo. 362; Walker v. Railroad, 193 Mo. 453; Burge v. Railroad, 244 Mo. 76; Farris v. Railroad, 167 Mo. App. 392; Green v. Railroad, 192 Mo. 131. (4) The court erred in submitting the case to the jury on the last-chance theory. Reeve's Admr. v. Railroad, 251 Mo. 169; Pope v. Railroad, 244 Mo. 76; Degonia v. Railroad, 224 Mo. 595; Hawkins v. Railroad, 135 Mo. App. 534; Schmidt v. Railroad, 191 Mo. 234; Boyd v. Railroad, 105 Mo. 382; Moore v. Railroad, 176 Mo. 546; McGee v. Railroad, 214 Mo. 542; Burge v. Railroad, 244 Mo. 96; Ruschenberg v. Railroad, 161 Mo. 81; Culbertson v. Railroad, 140 Mo. 59; Mammerberg v. St. Ry. Co., 62 Mo. App. 563.

*Duggins & Duggins* and *Aull & Aull* for respondent.

(1)   The demurrer to the evidence offered at the close of the plaintiff's testimony and at the close of all the testimony in the case was properly overruled. (a) The servants in charge of the locomotive and train that struck and killed Murrell on the crossing, failed and neglected to ring the bell on the engine as required by statute when approaching and passing over the crossing which was negligence *per se.* Lloyd v. Railroad, 128 Mo. 595; Sullivan v. Railroad, 117 Mo. 245; Gratiot v. Railroad, 116 Mo. 450; Murray v. Railroad 101 Mo. 242, Reyburn v. Railroad, 187 Mo. 565; Dickson v. Railroad, 104 Mo. 501; Hanlan v. Railroad, 104 Mo. 387; Karle v. Railroad 55 Mo. 476; McNulty v. Railroad, 203 Mo. 477; Weigman v. Railroad, 223 Mo. 699.   (b) Carelessly and negligently ran said locomotive and train of cars within and through the corporate limits of the city and to and over said public crossing therein, in violation of the ordinance prohibiting the running of locomotives and trains within such limits at a rate of speed exceeding six miles an hour.  This was negligence *per se* and a direct cause of Murrell's death.   Miller v. Engle, 185 Mo. App. 563; Lueders v. Railroad, 253 Mo. 97; Gratiot v. Railroad, 116 Mo. 463; Jackson v. Railroad, 157 Mo. 643; Johnson v. Railroad, 259 Mo. 535; Weller v. Railroad 120 Mo. 654   Schlerth v. Railroad, 115 Mo. 88 104; Dahlstrom v. Railroad, 108 Mo. 525; Murray v. Railroad, 101 Mo. 236; Bluedorn v. Railroad, 108 Mo. 439; Graney v. Railroad, 140 Mo. 89; Keim v. Railroad, 90 Mo. 321;   Schlerth v. Ry. Co., 96 Mo. 515.   If the train had been running as prescribed by ordinance every reasonable inference is that deceased would have cleared the track. Lueders v. Railroad, 253 Mo. 116; Murrell v. Railroad, 105 Mo. App. 94;  Johnson v. Railroad, 259 Mo. 550;   Schlerth v. Railroad 96 Mo. 515; Keim v. Railroad, 90 Mo. 324;  Prewitt v. Railroad, 134 Mo. 615; Graney v. Railroad, 140 Mo. 189.   (2) Violation of speed ordinance, and violation of statute,

both negligence *per se,* and causal connection between negligence and injury, sustained a verdict (barring contributory negligence as matter of law). Hunt v. Railroad, 262 Mo. 275; McNulty v. Railroad, 203 Mo. 477; McNulty v. Railroad, 166 Mo. App. 459; Stotler v. Railroad, 200 Mo. 121. (3) Contributory negligence as matter of law does not arise in this case. Dudley v. Railroad, 167 Mo. App. 665; Baker v. Railroad, 122 Mo. 544; McNulty v. Railroad, 203 Mo. 475; Weigman v. Railroad, 223 Mo. 699; Petty v. Railroad, 88 Mo. 306; Williams v. Railroad, 257 Mo. 115; Donohue v. Railroad, 91 Mo. 365; Kleiber v. Railroad, 107 Mo. 247. In no case has a pedestrian been charged with contributory negligence as matter of law where, from the very incipiency of the danger, and where from his very surroundings, he could first know of the approach of the train after he had lawfully and in the exercise of ordinary care placed himself in a position of peril. Harshaw v. Railroad, 173 Mo. App. 483. Where there are flagrant violations of the law resulting in injury, contributory negligence must be clearly made out. Yonkers v. Railroad, 182 Mo. App. 558; Weighman v. Railroad, 223 Mo. 719; Bluedorn v. Railroad, 108 Mo. 449; Kennayde v. Railroad, 45 Mo. 255; Dutcher v. Railroad, 91 Mo. 363; Petty v. Railroad, 88 Mo. 306; Baker v. Railroad, 147 Mo. 166; Jennings v. Railroad, 112 Mo. 268; Lueders v. Railroad, 253 Mo. 116; Sexton v. Railroad, 245 Mo. 254; Lyons v. Railroad, 253 Mo. 166; Weller v. Railroad, 164 Mo. 180. Where the laws are flagrantly violated contributory negligence should be submitted to the jury. Petty v. Railroad, 88 Mo. 306; Baker v. Railroad, 147 Mo. 166; Bluedorn v. Railroad, 121 Mo. 268, 108 Mo. 449. (4) If the evidence tends to, or if inferences therefrom, regardless of conter inferences, can be reasonably drawn, tending to uphold the action of the trial court; if after every inference which the trial jury might with any degree of propriety have made; if there is conflict in the evidence; if the truthfulness of a witness is in question;

if there is reason for difference of opinion among practical men from all walks of life  whether care or caution on part of deceased; or servants acted as ordinarily prudent servants under the facts and circumstances; whether they did, or had time to  warn  or to stop; if there is any uncertainty, the case should have been submitted to the jury and the trial court should be upheld. Miller v. Engle, 185 Mo. App. 363; Maginnis v. Railroad, 180 Mo. App. 694; Holmes v. Railroad, 207 Mo. 163; Buesching v. Gaslight Co., 73 Mo. 219; Weigman v. Railroad, 223 Mo. 722; Hunt v. Railroad, 262 Mo. 181; Troll v. Railroad, 254 Mo. 722; Stauffer v. Railroad, 243 Mo. 316-17; Weller v. Railroad, 164 Mo. 199; Murphy v. Railroad, 228 Mo. 76; Fritz v. Railroad, 243 Mo. 62; Church v. Railway, 119 Mo. 215; Williams v. Railroad, 257 Mo. 87; Dudley v: Railroad, 167 Mo. App. 647; Rollison v. Railroad, 252 Mo. 538; Johnson v. Railroad, 259 Mo. 550; Franklin v. Railroad, 188 Mo. 542; Power v. Railroad, 244 Mo. 1.; Petty v. Railroad, 88 Mo. 318; Keim v. Railway, 90 Mo. 314; Lamb v. Railroad, 147 Mo. 186; Hegberg v. Railroad, 164 Mo. App. 514. Negative testimony takes the case to the jury. Murray v. Railroad, 176 Mo. 183; Moore v. Railroad, 137 Mo. App. 53; Buckry-Ellis v. Railroad, 158 Mo. App. 506; Stotler v. Railroad, 200 Mo. 107; Murray v. Railroad, 101 Mo. 242; Isaacs v. Skrainka, 95 Mo. 517. Upon a demurrer to the evidence the right doctrine to go by is:  Defendant's testimony where contradicted is false;  plaintiff's testimony, whether contradicted or not, is true;  discrepancies, contradictions between witnesses or self contradictions by witnesses, and the weight due their testimony, are for the jury, not the court.  Plaintiff is entitled to the grace of having allowed in his favor every inference springing reasonably from the proof.  Fritz v. Railroad, 243 Mo. 79. (5) Deceased was in the exercise of due care.  (a)  He could not, when he went upon the crossing and tracks, by looking or listening have seen or heard an approaching train.  No train was within sight or hearing.  He could

7—279 Mo.

not tell upon what track a train was approaching, whether freight or passenger, nor in what direction to proceed to avoid it, even if he had knowledge of its approach. Harshaw v. Railroad, 173 Mo. App. 483; Dunn v. Railroad, 192 Mo. App. 260; Campbell v. Railroad, 175 Mo. 676; Gratiot v. Railroad 116 Mo. 450; Weigman v. Railroad; 223 Mo. 717; Weller v. Railroad, 120 Mo. 635; Williams v. Railroad, 257 Mo. 115. (b) The old man was not a trespasser nor did his right to pass over the crossing depend upon the permission of the railroad. Lueders v. Railroad, 253 Mo. 97. (c) When the evidence is silent, on the question as to whether the traveler, before crossing the track, looked and listened for the train, the presumption is that he did both, where there was such obstruction that had he looked he could not have seen, and had he listened it would have been difficult, if not impossible, to hear. Johnson v. Railroad 259 Mo. 547; Weigman v. Railroad, 223 Mo. 717. (d) If in and on the danger zone when the train approached, in the exercise of ordinary care, he was only required to exercise care commensurate with the situation and circumstances to extricate himself. He could not stop between tracks with safety. Weigman v. Railroad, 223 Mo. 717. A traveler in a walk four feet from the track is in the danger zone. Dunn v. Railroad, 192 Mo. App. 268. (e) A defendant cannot impart want of vigilance to one injured by reason of his acts of negligence if those very acts of negligence were the consequence of an omission of duty on the part of defendant. Weigman v. Railroad, 223 Mo. 723; Kennayde v. Railroad, 45 Mo. 262. (f) Deceased had the right to rely upon obedience to the law on the part of appellant. Mocowik v. Railroad, 196 Mo. 571; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180; Hutchinson v. Railroad, 161 Mo. 254; Lueders v. Railroad, 253 Mo. 116; Crawford v. Railroad, 215 Mo. 414; Felver v. Railroad, 216 Mo. 213; Dutcher v. Railroad, 241 Mo. 137. (6) Sec. 3078, R. S. 1909, has been, from the time of its passage, attacked by appellant in various ways

The section has been by the appellate courts upheld. This attack has long since been rendered nondebatable. Brown v. Railroad, 256 Mo. 532; State v. Saline County Court, 51 Mo. 350; State v. Callaway County Court, 51 Mo. 395; Fleming v. Railroad, 199 Mo. 390; O'Donnell v. Railroad, 197 Mo. 110; Fleming v. Railroad, 263 Mo. 187; Markey v. Railroad, 185 Mo. 348; Thomas v. Railroad, 101 U. S. 71; Smith v. Railroad, 61 Mo. 1, 17; Markey v. Railroad, 200 U. S. 622; Brady v. Railroad, 206 Mo. 521. Under the facts in this case the validity of the speed ordinance limiting the rate of speed to six miles an hour in approaching and passing over this crossing is no longer debatable. Holmes v. Railroad, 207 Mo. 162; St. Louis v. Weber, 44 Mo. 547; Gratiot v. Railroad, 116 Mo. 467; Jackson v. Railroad, 157 Mo. 643; Lueders v. Railroad, 253 Mo. 116; Roberston v. Railroad, 84 Mo. 123; Prewitt v. Railroad, 134 Mo. 627; Miller v. Railroad, 185 Mo. App. 574; Petty v. Railroad, 88 Mo. 306; Johnson v. Railroad, 259 Mo. 535; Eckhard v. Railroad, 190 Mo. 593; Riska v. Railroad, 180 Mo. 168. The presumption is that the speed ordinance is reasonable. Mullins v. Cemetery, 187 S. W. 1170; Hislop v. Joplin, 250 Mo. 558; St. Louis v. Theatre Co., 202 Mo. 690. (7) The court properly submitted the case to the jury on the humanitarian theory. Hunt v. Railroad, 262 Mo. 181; Maginnis v. Railroad, 182 Mo. App. 713, 187 S. W. 1165; Reyburn v. Railroad, 187 Mo. 565; Moore v. Railroad, 194 Mo. 1; Murray v. Transit Co., 108 Mo. App. 501; Klockenbrink v. Railroad, 172 Mo. 678; Murphy v. Railroad, 228 Mo. 76; Thompson v. Railroad, 243 Mo. 351; Feldman v. Railroad, 175 Mo. App. 634 Lueders v. Railroad, 253 Mo. 114; Johnson v. Railroad, 259 Mo. 550. Deceased became and was in imminent peril and the servants operating the locomotive and train saw, or by the exercise of ordinary care could have seen, him in his peril in time by the exercise of ordinary care to have slowed down the locomotive and train, to have given emergency warnings, to have used emergency ap-

pliances, to have stopped the train, but carelessly and negligently failed so to do. Hunt v. Railroad, 262 Mo. 181.

RAILEY, C.—This action was commenced by plaintiff, in the Circuit Court of Lafayette County Missouri, on September 17, 1913, as the widow of John D. Murrell, who was killed in the City of Higginsville in said Lafayette County, by an east-bound fast-passenger train, operated at the time by the Chicago & Alton Railroad Company, by virtue of a lease in 1879, from defendant, a Missouri coporation, which was the owner of the right-of-way, road-bed, tracks, etc., where deceased was killed. On defendant's application the venue was changed to Saline County, Missouri, and there tried upon plaintiff's second amended petition, which among other things, in substance, alleges the following grounds of negligence: 1. That the statutory signals were not given for the crossing, where deceased was killed. 2. That the train in question was being operated through the city limits of Higginsville, Missouri, in violation of its six-mile speed ordinance, and while traveling at a highly dangerous rate of speed, to-wit, twenty-five to thirty-five miles per hour. 3. Failure on the part of the servants operating the train to be at their posts of duty, to slow down the train and have the same under control as it approached and passed over the crossing, when they knew and saw, or by the exercise of ordinary care could have known and seen, deceased in peril on the crossing in time, by the exercise of ordinary care, to have slowed down the locomotive and train, given emergency signals or stopped the train and averted the killing, which they carelessly and negligently failed to do.

The answer to second amended petition contains (1) a general denial; (2) a plea of negligence on the part of deceased; (3) an averment that the statutes, under which it is sought to hold defendant, are unconstitutional; and (4) that the six-mile speed ordinance

of Higginsville is unreasonable, void, unconstitutional, and an unlawful interference with interstate commerce.

At the time of his death, deceased was sixty-seven years of age; his health was good, but he was a cripple. His right leg had been broken; he wore a stirrup on this leg; it was shorter than the other. He used a crutch under his left arm and a cane in his hand. Deceased lived about three blocks southwest of where he was killed, and walked very slowly.

It is conceded that, at the time of said killing, defendant was the lessor of the railroad right-of-way, road-bed and tracks over which the Chicago & Alton Railroad Company was operating the train which killed deceased. It is likewise conceded that, at the time of said killing, the Chicago & Alton Railroad Company was operating defendant's road, by virtue of the lease aforesaid, and that it was at the time an interstate common carrier, etc.

Plaintiff's evidence tends to show that the public crossing, where Murrell was killed, is situate in the heart of Higginsville, a city of the fourth class, with about 2700 inhabitants, the business portion of the city being north, and about half of the residence population south, of the railroad tracks, about midway between the depot and the western limits of the city, or about a quarter of a mile east of the western limits of the city and about 1200 feet west of the depot in said city. Two other public crossings intervened between the one on which Murrell was killed and the depot. There were two other public crossings between the depot and the eastern limits of the city. Murrell was killed at the intersection of Brand Street and the railroad tracks. Brand Street, after passing over the railroad tracks, west where the killing occurred, and Brand Street, with the other crossings mentioned, ran practically north and south. Brand Street was a regular traveled public road or street, and used by many residents going to and continues on north to other portions of the city. The railroad tracks ran in the general direction of east and

from their places of business. North and south of this crossing, where the killing occurred, and west thereof, except the railroad right-of-way, were many and numerous residences, extending to and beyond the city limits on the west. The crossing, with five tracks, covered a space of about fifty feet, over which there was constructed a plank walk about four feet wide, on the west side of Brand Street, over the railroad tracks, and there was a regular north-and-south wagon crossing, east of the sidewalk. The road-bed at this crossing was elevated above the ground on each side, the tracks being constructed on a fill, some four feet or more deep, extending west for about 1200 feet, and ending at the cut mentioned in evidence. The approach to the crossing from the south was up this incline to the road-bed and south switch track, parallel and connected with four other tracks, and connected with the next track north about 100 feet or more west of the crossing. The second track, traveling north, extended west from the crossing from 800 to 900 feet, where it connected with the next track north. The third track from the south, called in the evidence a "passing track," and at times used as the main track, continued west from the crossing some 1200 feet, where it connected with the next north track, called in the evidence, "the main track," which continued west from the crossing to Kansas City, Missouri. The north, or switch track, extended west about 200 or 300 feet, and connected with the main track. Plaintiff's evidence tends to show that the tracks at the crossing were about four feet and eight inches wide, between rails; and the space between the main track and passing track was thirteen feet and two inches. The entire distance from outside of north rail to outside of south rail was about fifty feet.

Plaintiff contends that a man on the crossing looking west along the tracks could see from 500 to 600 feet. Defendant contends that a man anywhere on the crossing could see an engine approaching from the west for

at least a thousand feet. Substantial testimony was offered in support of each contention.

The deceased came upon the board walk across the tracks, from the south, with his crutch and cane, and must have traveled north toward the main track where he was killed. The train was due at 11:35 a. m. and arrived at 11:40 a. m. on the day of the accident. Plaintiff's evidence tends to show that Murrell was crossing over the north rail of the main track when struck and killed, as his headless body, his brains, pieces of his skull, broken crutch, hat and clothing, were found immediately after the train passed, north of the north rail of the main track, between the latter and the north switch track, and some portion of same was attached to slivers on the north rail of the main track, commencing about ten feet east of the plank walk, and continuing for some distance.

Such other facts and circumstances shown by the record, as far as necessary, will be considered later, in connection with the instructions given and refused.

At the conclusion of plaintiff's evidence, the defendant interposed a demurrer thereto, which was overruled and an exception saved. At the conclusion of all the evidence, defendant again asked the court to direct a verdict in its behalf, which request was refused, and an exception saved to the ruling of the court.

The jury returned a verdict in favor of plaintiff for $2,000, and judgment was entered accordingly. Defendant, in due time, filed its motion for a new trial, which was overruled and the cause duly appealed by it to the Kansas City Court of Appeals, and certified to this court on account of the constitutional questions raised in the case.

I. The lease under which appellant was operating its trains over the property of defendant was executed in 1879. In its assignment of errors, defendant attacks Title. the constitutionality of Section 2 of the Act of the General Assembly for 1870, at pages 90 and 91, approved March 24, 1870, and now known as Section

3078, Revised Statutes 1909, as follows: "Section 3078, Revised Statutes 1909, is unconstitutional for the reason that the bill when enacted contained more than one subject, which was not clearly expressed in the title, as provided by Section 28, Article 4, of the Constitution of Missouri."

The above charge is more specifically stated at page 10 of appellant's brief, as follows: "By reference to the title of the act, it will be observed that at no place in the title is any reference made to holding the railroad leasing its line of railroad liable, the same as though operating it."

The title to the Act of 1870, page 89, reads as follows: "An Act to amend chapter sixty-three of the General Statutes, entitled 'of railroad companies,' so as to authorize the *consolidation, leasing* and *extension* of railroads." (Italics ours).

We had occasion to fully consider this subject in the recent case of Woodward Hardware Co. v. Fisher, 269 Mo. l. c. 276-9, where many recent authorities are collated, including some of those cited by appellant. We have no fault to find with the above cases, nor those cited by appellant, considered in connection with the general principles of law announced therein. In our opinion, they do not sustain appellant's contention, when applied to the facts before us.

In the Act of 1870, supra, the Legislature had under consideration the subject, as to what aid railroad companies might furnish each other by way of extension lease or consolidation. The State, acting through its legislative agencies, had the undoubted right in the granting of railroad charters to corporations organized under the laws of this State, to prohibit them from leasing such roads to railroad corporations, chartered under the laws of another State. The General Assembly likewise possessed the power to authorize leases under such circumstances, and to designate the terms and conditions upon which such leases could be made. [Fleming v. Railroad, 263 Mo. l. c. 186-7-8; Brown v. Railroad,

256 Mo. l. c. 533-4; Moorshead v. United Railways Co., 203 Mo. 121; Dean v. Railroad, 199 Mo. l. c. 390; Markey v. Railroad, 185 Mo. 348.] The same principle of law is recognized by Court in Banc in the recent case of State ex rel. v. Hemenway, 272 Mo. l. c. 199.

Appellant contends that the following portion of Section 2 of the Act of 1870, to-wit, "and a corporation in this State leasing its road to a corporation of another State shall remain liable as if it operated the road itself" relates to a different subject than the *lease* mentioned in the title to the act. We do not so interpret the act. On the contrary, we think it manifest that the Legislature intended that the words quoted above should be construed as an inseparable part of the lease itself. In other words, the title to the act provided that a lease might be made, but left the legal effect thereof to be determined in the body of the act. They both relate to the same subject, and contemplate the making of a lease by the Missouri Corporation, to a railroad corporation of another State, with the understanding, that the former shall remain liable as if it operated the road itself.

The cases cited by appellant are clearly distinguishable from the case at bar in many particulars and are insufficient, in our opinion, to overturn the validity of the act under consideration. We accordingly rule that the Act of 1870 is not obnoxious to the criticism leveled against it in appellant's brief, and that it is a valid enactment.

II. Appellant contends that the Higginsville speed ordinance of six miles an hour "is unreasonable, unconstitutional, and an attempt to interfere with and regulate interstate commerce, contrary to Section 8 of Article I of the Constitution of the United States." The following authorities are cited in support of this contention: Lusk v. Town of Dora, 224 Fed. 650; Zumault v. K. C. & I. Air Line, 71 Mo. App. 670; White v. Railroad, 44 Mo. App. 540; Plattsburg v. Hagenbush, 98 Mo. App. 669; Murphy v. Lindell

*Speed Ordinance.*

Ry. Co., 153 Mo. 252; Byington v. St. Louis R. R. Co., 147 Mo. 673.

In the Lusk case, supra, 224 Fed. 650, an injunction suit was brought to restrain the enforcement of a six-mile speed ordinance in a town of one thousand inhabitants. The court, under the peculiar facts of the case, sustained the injunction, and in doing so, at page 654, said: ''This finding is predicated upon the idea that the danger to be apprehended can be adequately guarded against by property protecting the crossing or crossings that need protection by flagmen, without unnecessarily impeding the plaintiffs' operation of the railroad by so stringent a speed limit.''

The court, by its decree, required the railroad company to maintain adequate protection against the hazards arising from the operation of trains over the crossings. It further appears that there was a watchman stationed at the principal crossing. We do not think this case can have any application to the facts before us.

In Zumault v. K. C. & I. Air Line, 71 Mo. App., 670, decided by Judge SMITH of the Kansas City Court of Appeals, it was held that the six-mile speed ordinance of Kansas City was inapplicable and oppressive in the operation of the Independence Air Line Railroad between the Grand Central Depot and the eastern limits of the city. Judge SMITH simply held that an ordinance might be declared unreasonable as to certain localities where there was no necessity for having a speed ordinance of this character.

In White v. Railroad, 44 Mo. App. 540, a speed ordinance of four miles an hour through Marshfield, Missouri, was held to be unreasonable under the facts disclosed by the record in said case. On pages 542-3, the court said: ''The uncontroverted facts show that the city has a population not exceeding fifteen hundred inhabitants, and that only about one-third of its area is platted, the residue consisting of farming lands. The restriction, if valid at all, extends over this entire area.

As far as the farm lands are concerned, the necessity of any restriction whatever is not obvious, and as far as the residue of the town is concerned, the necessity of a restriction to four miles an hour, which, as we know, is less than the maximum speed permitted in the most populous cities in this State, is equally not apparent. In the absence of any necessity shown, the restriction is clearly unreasonable. If one city may adopt it, they all may, and thereby make rapid transit, in which the people of the entire State are interested, an impossibility.'' In this case the ordinance was offered in evidence for the purpose of showing negligence, in a place where a cow was killed in the corporate limits. No such facts were presented, in regard to the necessity for such an ordinance as are shown in this case. The court does not intimate that a speed ordinance of six miles an hour would be held unreasonable, where the safety of the public demanded it.

In Plattsburg v. Hagenbush, 98 Mo. App. 670, the court had before it a six-mile speed ordinance of said city, and which was attacked as being unreasonable. On page 673, Judge SMITH said: ''We are unable to conclude that the limitation imposed by the ordinance, when applied to trains running on that part of said railroad line between East Street and the western limits of the city, is in the least unreasonable or oppressive. A like ordinance-limitation in what was doubtless a less populous city was held by the Supeme Court to be not unreasonable. [Robertson v. Railroad, 84 Mo. 119.] And so, too, it has been held by the same court that an ordinance of the City of St. Louis, limiting the speed of certain trains to six miles an hour, was not reasonable. [Gratiot v. Railroad, *ante.*] But it seems to us that the limitation as applicable to the movement of trains on that part of the said railroad between the eastern limits of the city and Second Street is wholly unnecessary for the protection of the public.'' It is thus seen, from an examination of this case, that there was no intention to hold, that a city like Higginsville could not

pass an ordinance that would be effective at the place where Murrell was killed.

In Murphy v. Lindell Ry. Co., 153 Mo. 252, and Byington v. St. Louis Railroad Co., 147 Mo. 673, cited by appellant, the validity of speed ordinances was not involved. The court, in those cases, held that unless the railway companies had accepted the ordinance which had been enacted, a third party would have no right of action based thereon for violation of same. These two cases were practically overruled in Jackson v. Railway Co., 157 Mo. 622, and in Sluder v. Transit Co., 189 Mo. 107 and following, decided by the Court in Banc.

We do not find, upon a careful examination of the authorities cited by appellant, any ground for holding the ordinance in controversy void. On the other hand, by a long and unbroken line of decisions in this State, six-mile speed ordinances have been upheld by this court, in cities and towns where they were necessary for the public welfare, and to prevent accidents at public crossings. In the following cases, speed ordinances were upheld by this court, to-wit: Karle v. Railway Co., 55 Mo. l. c. 483, where a five-mile ordinance at St. Joseph was sustained; Robertson v. Railroad, 84 Mo. l. c. 121, in which a six-mile ordinance in the town of Jamison was sustained; Merz v. Railway Co., 88 Mo. l. c. 675, in which a six-mile ordinance in the city of St. Louis was sustained; Keim v. Railway Co., 90 Mo. l. c. 321, in which the St. Louis six-mile ordinance was again sustained; Kelly v. Railway Co., 95 Mo. l. c. 285-6, in which the St. Louis ordinance was again sustained; Eswin v. Railway Co., 96 Mo. l. c. 294, in which the St. Louis ordinance was again sustained; Schlereth v. Railway Co., 96 Mo. l. c. 512, in which this court again sustained the St. Louis ordinance; Grube v. Railway Co., 98 Mo. l. c. 334, in which the six-mile speed ordinance of Kansas City was sustained; Gratiot v. Railway Co., 116 Mo. l. c. 455, in which the St. Louis ordinance was again sustained; Prewitt v. Railway Co., 134 Mo. l. c. 619-20, in which a six-mile ordinance of Sedalia was sustained;

Jackson v. Railway Co., 157 Mo. 621, in which a six-mile speed ordinance of West Plains was sustained, and the court, in its opinion, reviewed all the former authorities of this State in relation to this subject; Stotler v. Railroad, 200 Mo. l. c. 120, in which an eight-mile speed ordinance of Laddonia was sustained; King v. Railway Co., 211 Mo. l. c. 5, in which a six-mile ordinance of Elm Flat was sustained; Johnson v. Railroad, 259 Mo. l. c. 544, in which an eight-mile ordinance of Mexico was sustained; Hunt v. Railroad, 262 Mo. l. c. 275, in which a five-mile ordinance of Cape Girardeau was sustained. The last case cited was disposed of in Court in Banc.

With this long line of decisions confronting us, sustaining six-mile ordinances, we have no disposition to declare invalid the one adopted by Higginsville in controversy here. As a police regulation it was the duty of the municipality to protect its citizens in the enjoyment of their rights, under such circumstances as are disclosed in this record.

According to the plaintiff's evidence, the Brand Street crossing was located in the heart of Higginsville, a city of the fourth class, containing 2700 inhabitants, and over which many people traveled to and from their places of business.

Upon a full consideration of all the facts connected with the case, we have reached the conclusion that the ordinance in question is not unreasonable and that, at the place where Murrell was killed, it was needed for the protection of the public.

III. It is insisted by appellant, that the trial court committed error in submitting the case to the jury on the last-chance theory.

The petition undoubtedly states a good cause of action based upon the humanitarian rule, and stands unchallenged in defendant's assignment of errors. Plaintiff's instruction numbered 3 correctly placed

Sufficiency of Evidence. before the jury the law in respect to this subject, and is likewise unchallenged in appel-

lant's assignment of errors. Was the evidence sufficient to warrant the trial court in submitting this issue to the jury?

At the close of plaintiff's case in chief, defendant's demurrer thereto was overruled and it put before the jury its own evidence. The sufficiency of plaintiff's testimony must be determined from all the evidence in the case. It was the province of the jury to pass upon the facts, and every inference which men of average intelligence and fairness might legimitately draw from the proven facts, must be indulged in favor of plaintiff, in considering the demurrer to the testimony.

It may be conceded for the purposes of the case that deceased, at the time and place of the accident, was guilty of negligence which directly contributed to his own death, in failing to learn of the approach of the train before going upon the main track where he was killed. On the other hand, there was substantial evidence tending to show the following: That the servants in charge of the train were negligent in failing to ring the bell and keep it ringing, as required by the statute, before approaching the crossing where Murrell was killed; that they were guilty of negligence in failing to give proper and timely danger signals after deceased was known to be in peril; that they were guilty of negligence in violating the six-mile speed ordinance of Higginsville, and which they continued to violate until the time of killing; that they were guilty of common-law negligence in running the train, at the time and place of accident, at a dangerous and unsafe rate of speed; that the engineer was guilty of negligence, in failing to reduce the rate of speed with which he was running, after seeing deceased in peril, and apparently oblivious of the approach of the train; and was likewise negligent under such circumstances, in failing to give danger signals with a whistle, so as to arouse in deceased a realization of the danger into which he was then traveling.

In the absence of evidence to the contrary, the jury had the right to draw the inference that the engineer was at his place in the cab, looking toward the depot, as he owed that duty to the passengers on his train, as well as those who might be upon the crossing. [Reyburn v. Railroad, 187 Mo. l. c. 565-6.] The jury also had the right to infer from the facts before them, that the engineer and fireman were at their respective places in the cab, as evidence was offered by defendant tending to show that the station whistle was sounded and that the bell was rung at some time before the crossing was made. Especially is this true, as the train stopped at the station and, hence, the engineer must have been performing the duty concerning the movements of the train.

No witness claims to have seen deceased after he came upon the sidewalk and started across the tracks, or to have witnessed the killing, except one Joe Fleming, who testified in behalf of defendant. This witness was not only impeached, by other witnesses, who testified in the cause, but, in our opinion, his own testimony is inconsistent and self-contradictory. It is so at variance with the physical facts, that neither court, nor jury, were bound to give credence to his testimony. But even this witness says that deceased, after he knew the train was coming, just started off and hobbled along on his crutch and stirrup as usual.

Even if it be conceded that deceased was guilty of negligence, as heretofore stated, yet the jury had the right to infer from the other facts in the case, that the engineer saw deceased in peril when the latter was less than 500 feet away, moving to a place of danger, apparently oblivious of the approach of the train. The evidence is undisputed that the train ran on over the crossing twenty-five to thirty-five miles an hour, without the slightest effort to slow down the speed of same, when, by so doing, even to the extent of two seconds, it would probably have saved the life of deceased. Plaintiff's

evidence tends to show that deceased was in peril in front of a rapidly moving train, in plain view of the engineer for over 500 feet, when a few sharp blows of the whistle might have arrested his attention and saved him from entering upon the track. It is claimed on account of the curve that the engineer may not have seen deceased approaching the track, but the jury had the right to infer from all the evidence, as the deceased was approaching the track on the same side of the engineer, that when the comparatively straight track of 500 feet was reached, the engineer could see down the track, and had a plain view of deceased, moving toward the main track where he was killed. As said in the Reyburn case, the jury had the right to take into consideration the further fact that the engineer and fireman were not produced as witnesses, when, of all other persons, they would have been better prepared to have given the actual facts, than any one else could have done. Unless the humanitarian rule in this State is to be abandoned, the facts before us present a plain case for its application. [Reyburn v. Railroad, 187 Mo. 565; Eppstein v. Railway Co., 197 Mo. 720; Hinzeman v. Railroad, 199 Mo. 56; Holmes v. Railway Co., 207 Mo. 149; Lynch v. Railroad, 208 Mo. l. c. 34; Dutcher v. Railroad, 241 Mo. 137; Maginnis v. Railroad, 268 Mo. 667, 187 S. W. 1165.]

Many other well considered decisions of this court might be cited in line with the foregoing, but we deem the above sufficient to sustain the action of the trial court in overruling defendant's demurrer to the evidence and submitting the cause to the jury under the humanitarian rule.

IV. We call especial attention to the cases of Reyburn, Hinzeman and Holmes above cited, where the facts are fully set out and the principles of law governing the same are clearly defined.

Other Cases.

We have given full consideration to the assignment of errors submitted by appellant, as well as the propositions discussed in the respective briefs on file in

the case.   We are satisfied from the record before us that the judgment below was for the right party, and it is accordingly affirmed.   *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court.   All of the judges concur.